MICHAEL ST. DENIS PROFESSIONAL CORPORATION
Michael St. Denis (CA Bar No. 147952)
500 Silver Spur Road, Suite 204
Rancho Palos Verdes, California 90275
Telephone: (310) 378-4700
Facsimile:  (310) 378-8722
Email:  mike@mikestdenislaw.com


THE MARBURY LAW GROUP, PLLC
Shauna M. Wertheim, *Pro Hac Vice*
Timothy W. Johnson, *Pro Hac Vice*
Joanna L. Cohn, *Pro Hac Vice*
11800 Sunrise Valley Drive, 15th Floor
Reston, Virginia 20191
Telephone:  (571) 267-7002
Facsimile:   (703) 391-2901
Email: swertheim@marburylaw.com
        tjohnson@marburylaw.com
        jcohn@marburylaw.com

Attorneys for Plaintiff DAIMLER AG

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **Daimler AG**, a German corporation,<br><br>Plaintiff,<br><br>v.<br><br>**A-Z Wheels LLC, *et al.*,**<br><br>Defendants. | Case No. 3:16-cv-00875-JLS-MDD<br><br>**PLAINTIFF DAIMLER AG'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>Date:    April 26, 2018<br>Time:   1:30pm<br>Judge:  Hon. Janis L. Sammartino<br>Crtrm:  4D |

# TABLE OF CONTENTS

I.    INTRODUCTION ...................................................................................... 5

II.   LEGAL STANDARDS ............................................................................. 5

   A. Trademark Infringement ...................................................................... - 6 -

   B. Trademark Counterfeiting ................................................................... - 7 -

   C. Design Patent Infringement ................................................................ - 8 -

III.  ARGUMENT .......................................................................................... - 9 -

   A. Trademark Infringement and Counterfeiting ...................................... - 9 -

      1.  The DAIMLER Marks are valid and protectable marks owned by
          Daimler ......................................................................................... - 9 -

      2.  Defendants' unauthorized advertisement, offer for sale, and sale of
          various wheels using the DAIMLER Marks is likely to cause consumer
          confusion ..................................................................................... - 10 -

      3.  Defendants' Counterfeits Cause Confusion and Deceive ............ - 16 -

   B. Design Patent Infringement .............................................................. - 17 -

      1.  The 'D211 Patent is infringed by Defendants' wheels identified by
          MBZ-610 series part numbers. .................................................... - 18 -

IV.   CONCLUSION ...................................................................................... - 25 -

# TABLE OF AUTHORITIES

**Cases**

*AMF, Inc. v. Sleekcraft Boats,*
    599 F.2d 341 (9th Cir. 1979)......................................................................2, 6

*Anderson v. Liberty Lobby, Inc.,*
    477 U.S. 242 (1986) ..............................................................................1, 2, 3

*Au-Tomotive Gold, Inc. v. Volkswagen of Am.,*
    457 F.3d 1062 (9th Cir. 2006)..................................2, 6, 7, 9, 10, 11, 12

*Avia Group Int'l, Inc. v. L.A. Gear Cal., Inc.,*
    853 F.2d 1557 (Fed. Cir. 1998) ....................................................................4

*Celotex Corp. v. Catrett,*
    477 U.S. 317 (1986) ......................................................................................1

*Columbia Sportswear North Am., Inc., v. Seirus Innovative Accessories,*
    202 F. Supp. 3d 1186 (D. Or. 2016)...............................................................4

*Eclipse Assos. Ltd. v. Data Gen. Corp.,*
    894 F.2d 1114 (9th Cir. 1990)........................................................................6

*Egyptian Goddess, Inc. v. Swisa, Inc.,*
    542 F.3d 665 (Fed. Cir. 2008)...............................................................13, 14

*Goodyear Tire & Rubber Co. v. Hercules Tire & Rubber Co.,*
    162 F.3d 1113 (Fed. Cir. 1998) .................................................................4, 5

*Gorham Manufacturing Co. v. White,*
    81 U.S. 511 (1871) .......................................................................................13

*Gucci America, Inc. v. Pieta,*
    No. 04-9626, 2006 WL 4725706 (C.D. Cal. Jan. 23, 2006) ...........................3

*H-D Michigan, Inc. v. Biker's Dream Inc.,*
    48 U.S.P.Q.2d 1108 (C.D. Cal. 1998)............................................................3

*Int'l Gamco, Inc. v. Mutlimedia Games Inc.,*
    732 F. Supp. 2d 1082 (S.D. Cal. 2010) .........................................................4

*Levi Strauss & Co. v. Shilon,*
    121 F.3d 1309 (9th Cir. 1997)........................................................................3

*Louis Vuitton Malletier v. Akanoc Solutions,*
    658 F.3d 936 (9th Cir. 2011) ........................................................................4

*Network Automation, Inc. v. Advanced Sys. Concepts,*
    638 F.3d 1137 (9th Cir. 2011) ...........................................................2, 9. 11

*Nissan Motor Co. v. Nissan Computer Corp.,*
    378 F.3d 1002 (9th Cir. 2004) ......................................................................6

*Payless ShoeSource, Inc. v. Reebok Int'l Ltd.,*
    998 F.2d 985 (Fed. Cir. 1993) ....................................................................15

*Phillip Morris  USA Inc. v. Shalabi,*
    352 F. Supp. 2d 1067 (C.D. Cal. 2004) ......................................................12

*Power Balance LLC v. Power Force LLC,*
    No. 8:2010-cv-01726, 2010 WL 5174957 (C.D. Cal. Dec. 14, 2010) ..........12

*Quicksilver, Inc. v. Kymsta Corp.,*
    466 F.3d 749 (9th Cir. 2006) ........................................................................5

*Sport Dimension, Inc. v. Coleman Co., Inc.,*
    820 F.3d 1316 (Fed. Cir. 2016) ..................................................................13

*Tommy Bahama Group, Inc. v. Sexton,*
    No. 07-06360, 2009 WL 4673863 (N.D. Cal. Dec. 3, 2009) ..........................3

**Statutes**

15 U.S.C. § 1057(b) ...........................................................................................5
15 U.S.C. § 1114 ........................................................................................2, 3, 4
15 U.S.C. § 1115(a) ...........................................................................................5
15 U.S.C. § 1116(d)(1)(B)(i) ..............................................................................4
15 U.S.C. § 1117(c) ...........................................................................................3
15 U.S.C. § 1127 ...............................................................................................3

**Rules**

Fed. R. Civ. P. 32(a) ..........................................................................................2
Fed. R. Civ. P. 56 ..............................................................................................1

## I.     INTRODUCTION

Pursuant to Rule 56(b) of the Federal Rules of Civil Procedure, Plaintiff Daimler AG ("Daimler") brings this Memorandum of Points and Authorities in Support of its Motion for Partial Summary Judgment of trademark infringement and counterfeiting with respect to federally registered trademarks U.S. Reg. No. 657,386, U.S. Reg. No. 3,614,891, and U.S. Reg. No. 4,423,458, (collectively "the DAIMLER Marks") (portion of Count I of First Amended Complaint ("FAC")), and infringement of U.S. Design Patent No. D542,211 ("the 'D211 Patent") (portion of Count IV of FAC), against Defendants A-Z WHEELS LLC d/b/a USARIM, USARIM.COM, and EUROTECH WHEELS, GALAXY WHEELS & TIRES, LLC, and INFOBAHN INTERNATIONAL, INC. d/b/a INFOBAHN, EUROTECH, EUROTECH LUXURY WHEELS, EUROTECH WHEELS and USARIM (collectively "the Entity Defendants"), and Rasool Moalemi (collectively the Entity Defendants and Rasool Moalemi are referred to herein as "Defendants").

## II.    LEGAL STANDARDS

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, a court shall grant summary judgment if the moving party demonstrates the absence of any genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *see, e.g., Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). For the purposes of summary judgment, "material" means that the fact could affect the outcome of the case under governing substantive law. *Anderson v. Liberty Lobby,*

*Inc.,* 477 U.S. 242, 248 (1986).  For a dispute to be "genuine," a verdict for the nonmoving party must be able to be returned by a reasonable jury.  *Id.*  A lawfully taken deposition filed in a federal court action may be used in a later action involving the same subject matter between the same parties, their representatives, or successors-in-interest.  Fed. R. Civ. P. 32(a)(1), (a)(8).

### A.    Trademark Infringement

Where the likelihood of confusion is clear cut and the moving party makes out a *prima facie* case of infringement, summary judgment of trademark infringement is appropriate.  *Au-Tomotive Gold, Inc. v. Volkswagen of Am., Inc.*, 457 F.3d 1062, 1075 (9th Cir. 2006).  "When the goods produced by the alleged infringer compete for sales with those of the trademark owner, infringement usually will be found if the marks are sufficiently similar that confusion can be expected."  *AMF, Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348 (9th Cir. 1979).  Prevailing on a claim of trademark infringement under the Lanham Act, 15 U.S.C. § 1114, requires the party to establish: (1) ownership of a federally registered mark that is valid and protectable, and (2) unauthorized use of the mark in a manner that is likely to cause consumer confusion as to source, affiliation, or association of the unauthorized goods. *Network Automation, Inc. v. Advanced Sys. Concepts*, 638 F.3d 1137, 1144 (9th Cir. 2011).

Moreover, post-purchase confusion, *i.e.*, confusion on the part of someone other than the purchaser who, for example, simply sees the item after it has been purchased, can establish the likelihood of confusion under the Lanham Act.  *Au-*

*Tomotive Gold,* 457 F.3d at 1077.  Further, an offer to sell will suffice to establish liability for trademark infringement under the Lanham Act, regardless of whether actual sales were made.  *See Levi Strauss & Co. v. Shilon,* 121 F.3d 1309, 1312 (9th Cir. 1997); *Tommy Bahama Group, Inc. v. Sexton,* No. 07-06360, 2009 WL 4673863, at *4 (N.D. Cal. Dec. 3, 2009) ("The statute does not require evidence of an actual sale to establish infringement; an offer to sell is sufficient.").

### B.    Trademark Counterfeiting

To prevail on a claim of trademark counterfeiting under the Lanham Act, 15 U.S.C. § 1114, a party must show ownership of a valid trademark, and use of a counterfeit of the party's trademark by another in connection with the sale of goods, without authorization, that is likely to cause confusion, to cause mistake, or to deceive. 15 U.S.C. § 1114(1); *H-D Michigan, Inc. v. Biker's Dream Inc*., 48 U.S.P.Q.2d 1108, 1111 (C.D. Cal. 1998); *Gucci America, Inc. v. Pieta*, No. 04-9626, 2006 WL 4725706, at *3 (C.D. Cal. Jan. 23, 2006).

Under the Lanham Act, a "counterfeit" is a "spurious mark which is identical with, or substantially indistinguishable from, a registered mark." 15 U.S.C. § 1127. Specifically, "a counterfeit mark for purposes of § 1117(c) is 'a counterfeit of a mark that is registered on the principal register in the United States Patent and Trademark Office for such goods or services sold, offered for sale, or distributed and that is in use, whether or not the person against whom relief is sought knew such mark was so

registered.'" *Louis Vuitton Malletier v. Akanoc Solutions*, 658 F.3d 936, 945 (9th Cir. 2011) (quoting § 1116(d)(l)(B)(i)).

An offer to sell a counterfeit good, without the consent of the trademark owner, is sufficient to establish trademark counterfeiting under the Lanham Act. 15 U.S.C. § 1114(1)(a) (holding liable "[a]ny person who shall, without the consent of the registrant, "use in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the . . . offering for sale . . . of any goods . . . [where] such use is likely to cause confusion, or to cause mistake").

## C.   Design Patent Infringement

Summary judgment is as appropriate for design patent infringement as it is in any other patent case. *Avia Group Int'l, Inc. v. L.A. Gear Cal., Inc.*, 853 F.2d 1557, 1561-62 (Fed. Cir. 1998); *see also Int'l Gamco, Inc. v. Mutlimedia Games Inc.*, 732 F. Supp. 2d 1082, 1087 (S.D. Cal. 2010).   Infringement of a design patent is the unauthorized manufacture, sale, or use of an article embodying the patented design or any colorable imitation thereof. *Goodyear Tire & Rubber Co. v. Hercules Tire & Rubber Co.*, 162 F.3d 1113, 1116-17 (Fed. Cir. 1998).   Infringement of a design patent is evaluated in a two-step process, requiring the court to (1) construe the claims of the design patent, and (2) compare the construed claims to the accused product. *Columbia Sportswear North Am., Inc., v. Seirus Innovative Accessories*, 202 F. Supp. 3d 1186, 1190-91 (D. Or. 2016).   The accused product infringes the design patent if the designs have the same general visual appearance, such that it is likely that an ordinary

observer would be deceived into confusing the two designs.  *Goodyear*, 162 F.3d at 1118.

## III.   ARGUMENT

### A.   Trademark Infringement and Counterfeiting

Based on an analysis of the facts presented in Daimler's Separate Statement of Undisputed Material Facts ("SMF") filed contemporaneously herewith, Defendants' use of the DAIMLER Marks constitutes trademark infringement and counterfeiting because, without Daimler's consent, Defendants: (1) advertised, offered for sale, and/or sold various wheels using the DAIMLER Marks in a manner that is likely to cause confusion as to the source, affiliation, connection or association of the Defendants or the wheels; and (2) used the DAIMLER Marks in connection with offers for sale and/or sales of non-genuine goods.

#### 1.   The DAIMLER Marks are valid and protectable marks owned by Daimler

Registration of a mark on the Principal Register in the U.S. Patent and Trademark Office constitutes *prima facie* evidence of the ownership and validity in association with the goods and services outlined in the registration.  *See* 15 U.S.C. §§ 1057(b), 1115(a); *see also Quicksilver, Inc. v. Kymsta Corp.*, 466 F.3d 749, 755 (9th Cir. 2006).

Daimler owns valid federal registrations in class 12 for the mark MERCEDES-BENZ, (U.S. Reg. No. 657,386), and for its Three-Point Star design (U.S. Reg. Nos. 3,614,891 and 4,423,458).  (*See* SMF ¶ 1.)

> **2.**     **Defendants' unauthorized advertisement, offer for sale, and sale of various wheels using the DAIMLER Marks is likely to cause consumer confusion**

A likelihood of confusion exists when customers viewing the mark would probably assume that the product it represents is associated with the source of a different product identified by a similar mark.  *Au-Tomotive Gold,* 457 F.3d at 1075-76. The Ninth Circuit has established eight factors to consider in determining likelihood of confusion ("*Sleekcraft* factors"): 1) strength of the mark; 2) proximity of the goods; 3) similarity of the marks; 4) evidence of actual confusion; 5) marketing channels; 6) type of goods and degree of care likely to be exercised by the purchaser; 7) defendant's intent in selecting the mark; and 8) likelihood of expansion of the product line. *Nissan Motor Co. v. Nissan Computer Corp*., 378 F.3d 1002, 1018-1019 (9th Cir. 2004) (citing *Sleekcraft*, 599 F.2d at 348-49).  However, the presence or absence of any particular factor should not necessarily resolve whether there is a likelihood of confusion. *Au-Tomotive Gold,* 457 F.3d at 1076 ("elements are not applied mechanically; courts may examine some or all of the factors, depending on their relevance and importance"); *see also Eclipse Assos. Ltd. v. Data Gen. Corp*., 894 F.2d 1114, 1118 (9th Cir. 1990) (holding that the factors are "not meant to be

requirements or hoops that a district court need jump through to make the determination").

Based on the undisputed facts presented herein, Defendants' use of the DAIMLER Marks establishes trademark infringement, as such use is likely to cause consumer confusion.

### a.   MERCEDES-BENZ

As a whole, the *Sleekcraft* factors weigh heavily in favor of a finding of likelihood of confusion related to Defendants' unauthorized advertisement, offers for sale, and sales of various wheels using Daimler's registered trademark for MERCEDES-BENZ.  Specifically, the strength of Daimler's MERCEDES-BENZ mark, the proximity of Defendants' and Daimler's wheels, the similarity of the marks, the marketing channels, the type of goods and degree of care likely to be exercised by the purchaser, and Defendants' intent, are all factors that are in Daimler's favor.

First, Daimler's MERCEDES-BENZ mark is an inherently distinctive, commercially strong mark that has been in use for 92-plus years and registered in the U.S. for nearly 60 years.  (*See* SMF ¶ 2.) Indeed, the Ninth Circuit has referred to the fame of Daimler's Three Point Star design.  *See Au-Tomotive Gold*, 457 F.3d at 1067 ("Famous trademarks have an exalted status of their own in today's consumer culture . . . Consumers sometimes buy products bearing marks such as . . . the Mercedes tri point star . . . for the appeal of the mark." MERCEDES-BENZ is not used by the

public as a generic term, but rather to refer to a particular brand of cars and parts for those cars.

Next, Defendants' wheels compete directly with Daimler's replacement wheels for its vehicles. The facts presented establish a large volume of eBay auctions by the seller "usarim" and offers for sale under the Amazon seller login ID "UsaRim" using the words "Mercedes Benz." (*See* SMF ¶¶ 21-37.) Such use by Defendants in their online offers for sale and advertisements is clearly intended to invoke Daimler's distinctive MERCEDES-BENZ mark.

Further, the marketing channels are the same for Daimler's and Defendants' wheels. Defendants sell their wheels on-line through various websites, including the website usarim.com ("USARIM website"), ebay.com ("eBay website"), and Amazon.com ("Amazon website"). (*See* SMF ¶¶ 10-37.) Daimler maintains an online presence through www.mbusa.com ("MBUSA website") website, which allows customers to purchase accessories, including wheels and wheel packages, online from parts dealers authorized by its subsidiary Mercedes-Benz USA ("MBUSA"). (*See* SMF ¶¶ 38, 39.)

Next, the type of goods and degree of care for the consumer buying the goods are such that even a reasonably prudent consumer accustomed to shopping online would be fooled into believing the origin of Defendants' wheels was Daimler. For example, on the USARIM website, Defendants falsely boast: "Some of our wholesale

partners include . . . Mercedes Benz and Audi factory dealers," and "We manufacture our wheels in several OEM approved factories throughout Asia." (*See* SMF ¶ 40.)

In fact, as admitted by Rasool Moalemi, Defendants are neither wholesale partners of Daimler or its wholly-owned subsidiaries, nor are they original equipment manufacturers of Daimler Wheels. (SMF ¶ 41.) As such, Defendants are deliberately leading a reasonably prudent consumer to be confused, in an apparent attempt to deceive consumers—pre-sale and post-sale—by knowingly adopting Daimler's MERCEDES-BENZ mark.

Further, because, as discussed above, the Defendants and Daimler are direct competitors for the repair/replacement of wheels on the consumer's vehicles, the likelihood of expansion of the product line is unimportant in the analysis for likelihood of confusion. *See Network Automation*, 638 F.3d at 1153.

Last, while Daimler has not presented any evidence of actual confusion, the uncontested fact that there is no evidence of actual confusion has no legal significance. "Failure to prove instances of actual confusion is not dispositive against a trademark plaintiff, because actual confusion is hard to prove; difficulties in gathering evidence of actual confusion make its absence generally unnoteworthy." *Au-Tomotive Gold,* 457 F.3d at 1076-77.

As the *Sleekcraft* factors weigh in favor of a finding of likelihood of confusion related to Defendants' use of Daimler's MERCEDES-BENZ mark, Daimler has

established a likelihood of confusion necessary to prevail on its claim of federal trademark infringement with respect to the MERCEDES-BENZ mark.

### b.      Three-Point Star design

As a whole, the *Sleekcraft* factors all weigh heavily in favor of a finding of likelihood of confusion related to Defendants' unauthorized advertisement, offer for sale, and sale of various wheels using Daimler's registered Three-Point Star design marks.   Specifically, the strength of Three-Point Star design, the proximity of Defendants' and Daimler's wheels, the similarity of the marks, the marketing channels, the type of goods and degree of care likely to be exercised by the purchaser, Defendants' intent, and post-sale confusion are all factors that are in Daimler's favor.

First, Daimler's Three-Point Star is an inherently distinctive and commercially strong design, which has been registered since 2009 and claims priority dating back more than a decade.  (*See* SMF ¶¶ 3, 4.)   The Three-Point Star design is not used by the public as a generic logo, but rather to identify a particular brand of vehicles and parts for those vehicles.  In fact, marks with Daimler's three-point star have been cited by the Ninth Circuit as examples of distinctive marks.  *See Au-Tomotive Gold,* 457 F.3d at 1064.

Next, Defendants' wheels compete directly with Daimler's replacement wheels for Daimler's vehicles.  Defendants' use of the Three-Point Star design in association with Defendants' wheels is identical to the Daimler's own use.  For example, both the

17-CHR Wheels and 19-GMT Wheels purchased by Daimler's investigator in 2015 included a center cap bearing a Three-Point Star design.  (*See* SMF ¶ 16.)

Further, the marketing channels are the same for Daimler's and Defendants' wheels.  As discussed above, Defendants' sell their wheels online through various websites including the USARIM website and the eBay website, and Daimler has a strong online market through the MBUSA website offering wheel packages and links to authorized parts dealers.  (*See* SMF ¶¶ 10-39.)

Next, the type of goods and degree of care for the consumer buying the goods are such that even a reasonably prudent consumer accustomed to shopping online would be fooled into believing the origin of Galaxy Wheels & Tires wheels was Daimler.  For example, as discussed above, Defendants falsely boast on the USARIM website that: "Some of our wholesale partners include . . . Mercedes Benz and Audi factory dealers," and "We manufacture our wheels in several OEM approved factories throughout Asia."  (SMF ¶ 40.)  As Defendants are not wholesale partners of Daimler or its wholly-owned subsidiaries (s*ee* SMF ¶ 41), such representation is intended to lead the reasonably prudent consumer to be confused.  As such, Defendants' intentions are to deceive customers by knowingly adopting Daimler's Three-Point Star design.

Moreover, since, as discussed above, Defendants and Daimler are direct competitors for the repair/replacement of wheels on the consumer's vehicles, the

likelihood of expansion of the product line is unimportant in the analysis for likelihood of confusion. *Network Automation*, 638 F.3d at 1153.

Last, while Daimler has not presented any evidence of actual confusion, the uncontested fact that there is no evidence of actual confusion has no legal significance. "Failure to prove instances of actual confusion is not dispositive against a trademark plaintiff, because actual confusion is hard to prove; difficulties in gathering evidence of actual confusion make its absence generally unnoteworthy." *Au-Tomotive Gold,* 457 F.3d at 1076-77. Additionally, confusion on the part of a person—not the purchasing customer—who sees Defendants' wheels including use of the Three-Point Star design on a vehicle will be inherent as they include Daimler's distinctive marks without any confusion-obviating indication. *See id.* at 1077-78.

As the *Sleekcraft* factors weigh in favor of a finding of likelihood of confusion related to Defendants' use of Daimler's marks for the Three-Point Star design, Daimler has established a likelihood of confusion necessary to prevail on its claim of federal trademark infringement with respect to these marks.

### 3.    Defendants' Counterfeits Cause Confusion and Deceive

Defendants' unauthorized advertisements, offer for sale, and sale of their wheels using copies of, or marks that are substantially indistinguishable from, Daimler's MERCEDES-BENZ mark and Three-Point Star design constitutes direct counterfeiting of the DAIMLER Marks. Specifically, where it is established that marks used by a defendant are counterfeits, likelihood of confusion is presumed, and

analysis of the *Sleekcraft* factors is unnecessary.  *See, e.g., Power Balance LLC v. Power Force LLC*, No. 8:2010-cv-01726, 2010 WL 5174957, at *4 (C.D. Cal. Dec. 4, 2010) ("Where . . . one produces counterfeit goods in an apparent attempt to capitalize upon the popularity of, and demand for, another's product, there is a presumption of likelihood of confusion."); *Phillip Morris  USA Inc. v. Shalabi*, 352 F. Supp. 2d 1067, 1073 (C.D. Cal. 2004) ("[I]n cases involving counterfeit marks, it is unnecessary to perform the step-by-step [likelihood of confusion] examination because counterfeit marks are inherently confusing."  Based on the facts presented herein, Daimler has established counterfeiting by Defendants based on their unauthorized use of the MERCEDES-BENZ mark in its online retail, and use of the Three-Point Star design in association with actual non-genuine products sold.

**B.     Design Patent Infringement**

Words cannot easily describe designs, and a design patent's claim is better represented by an illustration than written claim construction.  *Sport Dimension, Inc. v. Coleman Co., Inc.*, 820 F.3d 1316, 1320 (Fed. Cir. 2016).  The claim scope of a design patent is one that covers the overall ornamentation, not an element-by-element comparison.  *Id.* at 1322.  Though certain elements of an article may be functional, their functionality does not preclude these elements from having protectable ornamentation and t contributing to the design's overall ornamentation.  *Id.* at 1321-23.

As set forth by the Supreme Court, "if, in the eye of an ordinary observer, giving such attention as a purchaser usually gives, two designs are substantially the same, if the resemblance is such as to deceive such an observer, inducing him to purchase one supposing it to be the other, the first one patented is infringed by the other." *Gorham Manufacturing Co. v. White*, 81 U.S. 511, 528, (1871).  In applying this so called "ordinary observer test," the ordinary observer is held to view the differences between the patented design and accused product in light of the prior art. *Egyptian Goddess, Inc. v. Swisa, Inc.*, 542 F.3d 665, 676 (Fed. Cir. 2008).  The burden of production as to any comparison prior art is on the accused infringer.  *Id.* at 678-79.  Minor differences between the patented design and accused product "do not prevent a finding of infringement where the overall effect of the designs is substantially the same." *Payless ShoeSource, Inc. v. Reebok Int'l Ltd.*, 998 F.2d 985, 991 (Fed. Cir. 1993).

### 1.     The 'D211 Patent is infringed by Defendants' wheels identified by MBZ-610 series part numbers.

The 'D211 Patent is properly construed as the ornamental design for a front face of a vehicle wheel, as shown and described in FIGs. 1–4 of the 'D211 Patent.  The broken lines are for illustrative purposes only and form no part of the claimed design.  FIGs. 1–4 of the 'D211 Patent are reproduced below.

| Claim of the 'D211 Patent |
| :---: |



Whether there are functional elements to the ornamental design for a front face of a vehicle wheel as claimed in the 'D211 Patent, the issue is moot as Defendants' copying of the 'D211 Patent's design is wholesale in nature.  The MBZ-610 series part numbers are used to identify various wheels sold by the Defendants that are virtually identical to the 'D211 Patent's design.  (*See* SMF ¶ 42.)  As an example, a side by side comparison of FIGs. 1 and 2 of the 'D211 Patent and Defendants' part number MBZ-610-19-MB offered for sale on the eBay website under item number 381745469700 shows that the patented and accused designs are virtually identical.

| Claim of the 'D211 Patent | MBZ-610-19-MB |
|---|---|
|  |  |



| Claim of the 'D211 Patent | MBZ-610-19-MB |
|---|---|
| | (*See* SMF ¶ 25.) |

As another example, a side by side comparison of FIGs. 1 and 2 of the 'D211 Patent and Defendants' part number MBZ-610-20-CHR offered on Amazon under item number B00362OU4Q on July 10, 2017 shows that the patented and accused designs are virtually identical.

| Claim of the 'D211 Patent | MBZ-610-19-MB |
|---|---|
| | (*See* SMF ¶37.) |

The conclusion that the MBZ-610 series part numbered wheels sold by the Defendants are virtually identical to the 'D211 Patent's design is further confirmed when the comparison is conducted in view of the prior art designs listed on the face of the 'D211 Patent.  (*See* SMF ¶¶ 5-7.)

Representative figures from: 1) each of the prior art designs; 2) the 'D211 Patent; and 3) Defendants' part number MBZ-610-19-MB offered for sale on eBay under item number 381745469700 are compared below.

| Prior Art (SMF ¶ 6.) | 'D211 Patent (SMF ¶ 5.) | MBZ-610-19-MB (SMF ¶ 25.) |
|---|---|---|
|  (Wright D564.) |  FIG.1 |  |
|  (Weld D547.) |  FIG.1 |  |
|  (Hussaini D618.) |  FIG.1 |  |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



| Prior Art (SMF ¶ 6.) | 'D211 Patent (SMF ¶ 5.) | MBZ-610-19-MB (SMF ¶ 25.) |
|---|---|---|
| (Yoshida D846.) | FIG.1 | |
| (Kohl D876.) | FIG.1 | |
| (Hieke D689.) | FIG.1 | |
| (Maifrini D853.) | FIG.1 | |

| Prior Art<br>(SMF ¶ 6.) | 'D211 Patent<br>(SMF ¶ 5.) | MBZ-610-19-MB<br>(SMF ¶ 25.) |
|---|---|---|
| <br>(Maifrini D663.) | <br>FIG.1 |  |
| <br>(Pollmann D770.) | <br>FIG.1 |  |
| <br>(Gallert D098.) | <br>FIG.1 |  |
| <br>(Echazabal D003.) | <br>FIG.1 |  |

| Prior Art (SMF ¶ 6.) | 'D211 Patent (SMF ¶ 5.) | MBZ-610-19-MB (SMF ¶ 25.) |
|---|---|---|
|  (Elmit D491.) |  FIG.1 |  |
|  (Elmit D949.) |  FIG.1 |  |

The ornamental design of the 'D211 Patent is distinct from any designs of the prior art, while the design of the MBZ-610 series part numbered wheels sold by the Defendants is virtually identical to the 'D211 Patent's design. The uniqueness of the 'D211 Patent when compared to the prior art and the closeness of the design of the MBZ-610 series part numbered wheels to the 'D211 Patent can only lead to a determination that, in the eyes of an ordinary observer, the designs are substantially the same. As the design of the MBZ-610 series part numbered wheels sold by the Defendants are substantially the same to an ordinary observer as the 'D211 Patent's design, no reasonable jury, properly instructed, could reach a conclusion other than that the MBZ-610 series part numbered wheels infringe the 'D211 Patent.

1

## IV.   CONCLUSION

2

3        For the foregoing reasons, this Court should grant summary judgment that the

4   Defendants have infringed the DAIMLER Marks and infringed the DAIMLER

5   Patents.

6

7

8                                    Respectfully submitted,

9   Dated: January 5, 2018          **THE MARBURY LAW GROUP, PLLC**

10                                   By:  /s/ Shauna M. Wertheim

11                                   Shauna M. Wertheim (*pro hac vice*)
                                     Michael St. Denis

12                                   Attorneys for Plaintiff

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28