UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAIMLER AG, a German corporation,<br><br>           Plaintiff,<br><br>v.<br><br>A-Z WHEELS LLC d/b/a USARim.COM, et al.,<br><br>           Defendants. | Case No.: 16-CV-875-JLS (MDD)<br><br>**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**<br><br>(ECF No. 58) |

Presently before the Court is Plaintiff Daimler AG's Motion for Partial Summary Judgment, ("MSJ," ECF No. 58-1). Also before the Court is Defendants' Opposition to the Motion, ("Opp'n," ECF No. 70), and Plaintiff's Reply in Support of the Motion, ("Reply," ECF No. 73). The Court heard oral argument on August 8, 2018. After considering the Parties' arguments and the law, the Court **GRANTS** the Motion for Partial Summary Judgment.

**BACKGROUND**

Plaintiff Daimler AG produces "premier luxury automotive vehicles and parts" including wheels. (First Amended Complaint, "FAC," ECF No. 33, ¶ 3.) Plaintiff produces and sells worldwide "its vehicles and related parts under the distinctive Mercedes-Benz brand." (*Id.* ¶ 17.) Plaintiff owns federal trademark and service mark registrations for various marks; as relevant here, the mark MERCEDES-BENZ and the

"Three-Point Star" mark. (*Id.* ¶ 22.)[1] Plaintiff states it uses the mark MERCEDES-BENZ in connection with advertising and selling vehicles and goods. (*Id.* ¶ 19.) Plaintiff also uses the Three-Point Star mark "in connection with advertising and selling Mercedes-Benz vehicles and/or related goods and services." (*Id.*) Plaintiff also owns various design patents, as relevant here, U.S. Design Patent No. D542,211 ("the 'D211 patent"). (*Id.* ¶ 35.)

Plaintiff has filed a Complaint against various Defendants: (1) A-Z Wheels LLC d/b/a USArim, USArim.com, and Eurotech Wheels; (2) Galaxy Wheels & Tires, LLC; (3) Infobahn International, Inc. d/b/a Infobahn, Eurotech, Eurotech Luxury Wheels, Eurotech Wheels, and USArim; (4) Rasool Moalemi a/k/a/ Russ Moalemi d/b/a ABC Wheels, XYZ Wheels, OEMWheelPlus, USArim, Galazy Wheels, A-Z Wheels, and Eurotech; (5) Ryan Moalemi; and (6) Joshua Moalemi. Plaintiff claims Defendants operate a website where they advertise and sell automotive wheels. (*Id.* ¶ 41.) Plaintiff claims Defendants are using Plaintiff's trademarks "in connection with the manufacture, offer for sale, sale and distribution of wheels which are not manufactured, authorized or sold by" Plaintiff. (*Id.* ¶ 1.) Plaintiff also claims Defendants are reproducing, manufacturing, selling, and distributing wheels "which blatantly copy issued design patents in various distinctive and artistic wheel designs owned by" Plaintiff. (*Id.*) Plaintiff moves for summary judgment on its trademark infringement and counterfeiting claim, (MSJ 9), and its design patent infringement claim, (*id.* at 17).

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 56(a), a party may move for summary judgment as to a claim or defense or part of a claim or defense. Summary judgment is appropriate where the Court is satisfied that there is "no genuine dispute as to any material

---

[1]  (FAC ¶ 19)

fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Material facts are those that may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine dispute of material fact exists only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* When the Court considers the evidence presented by the parties, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255.

The initial burden of establishing the absence of a genuine issue of material fact falls on the moving party. *Celotex*, 477 U.S. at 323. The moving party may meet this burden by identifying the "portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,'" that show an absence of dispute regarding a material fact. *Id.* When a plaintiff seeks summary judgment as to an element for which it bears the burden of proof, "it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (quoting *Houghton v. South*, 965 F.2d 1532, 1536 (9th Cir. 1992)).

Once the moving party satisfies this initial burden, the nonmoving party must identify specific facts showing that there is a genuine dispute for trial. *Celotex*, 477 U.S. at 324. This requires "more than simply show[ing] that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, to survive summary judgment, the nonmoving party must "by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts'" that would allow a reasonable fact finder to return a verdict for the non-moving party. *Celotex*, 477 U.S. at 324; *Anderson*, 477 U.S. at 248. The non-moving party cannot oppose a properly supported summary judgment motion by "rest[ing] on mere allegations or denials of his pleadings." *Anderson*, 477 U.S. at 256.

## ANALYSIS

Plaintiff moves for summary judgment against all of the above entity Defendants

(the "Entity Defendants") and Rasool Moalemi. (Reply 2.) Plaintiff moves for summary judgment on its trademark infringement and counterfeiting claims and on its design patent infringement claim. The Court will first analyze the alleged trademark infringement and second the alleged design patent infringement. The Court will then analyze the alleged personal liability of Mr. Moalemi and liability of the Entity Defendants.

## I. Trademark Infringement and Counterfeiting

Plaintiff states it owns valid federal registrations in class 12 for the mark MERCEDES-BENZ, (U.S. Reg. No. 657,386), and for its Three-Point Star design (U.S. Reg. Nos. 3,614,891 and 4,423,458). (FAC ¶ 22; MSJ 10.) Plaintiff claims Defendants are infringing both marks.

### A. Trademark Infringement

To state a valid cause of action for trademark infringement under the Lanham Act, a plaintiff "must prove: (1) that it has a protectable ownership interest in the mark; and (2) that the defendant's use of the mark is likely to cause consumer confusion." *Rearden LLC v. Rearden Commerce, Inc.*, 683 F.3d 1190, 1202 (9th Cir. 2012) (quoting *Network Automation, Inc. v. Advanced Sys. Concepts, Inc.*, 638 F.3d 1137, 1144 (9th Cir. 2011)).

As to the first factor, "[t]o acquire ownership of a trademark it is not enough to have invented the mark first or even to have registered it first; the party claiming ownership must have been the first to actually use the mark in the sale of goods or services." *Sengoku Works Ltd. v. RMC Int'l, Ltd.*, 96 F.3d 1217, 1219 (9th Cir. 1996) (citation omitted). "Therefore, a party pursuing a trademark claim must meet a threshold 'use in commerce' requirement." *Rearden LLC*, 683 F.3d at 1203. "[R]egistration of the mark on the Principal Register in the Patent and Trademark Office constitutes prima facie evidence of the validity of the registered mark and of . . . exclusive right to use the mark on the goods and services specified in the registration." *Brookfield Commc'ns, Inc. v. W. Coast Entm't Corp.*, 174 F.3d 1036, 1047 (9th Cir. 1999). The opposing party may rebut the presumption of ownership by showing it used the mark in commerce first. *Id.* Here, Plaintiff has shown it owns valid registrations for the marks at issue. (*See* FAC ¶ 22.) Defendants make no

argument rebutting this presumption, thus, Plaintiff has established a protectable ownership interest in the marks. The Court's inquiry therefore focuses on likelihood of confusion.

In analyzing whether there is a likelihood of confusion between the two marks at issue, courts consider eight factors, known as the *Sleekcraft* factors. *Rearden LLC*, 683 F.3d at 1209. These eight factors are: (1) strength of the mark; (2) proximity of the goods; (3) similarity of the marks; (4) evidence of actual confusion; (5) marketing channels used; (6) type of goods and the degree of care likely to be exercised by the purchaser; (7) defendant's intent in selecting the mark; and (8) likelihood of expansion of the product lines. *Id.* (citing *AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348–49 (9th Cir. 1979), *abrogated in part by Mattel, Inc. v. Walking Mountain Prods.*, 353 F.3d 792 (9th Cir. 2003)). However, these eight factors are not exhaustive and "other variables besides the enumerated factors should also be taken into account based on the particular circumstances." *Id.* Additionally, "[w]hen the goods produced by the alleged infringer compete for sales with those of the trademark owner, infringement usually will be found if the marks are sufficiently similar that confusion can be expected." *Sleekcraft*, 599 F.2d at 348.

Furthermore, the counterfeiting of another's trademark establishes a presumption of a likelihood of confusion.[2] *Brookfield Commc'ns*, 174 F.3d at 1056 ("In light of the virtual identity of marks, if they were used with identical products or services likelihood of confusion would follow as a matter of course."); *see Louis Vuitton Malletier, S.A. v. Akanoc Sols., Inc.*, 658 F.3d 936, 945 (9th Cir. 2011) ("[T]he presumption [of likelihood of confusion] arises when intent to cause confusion is coupled with the use of a counterfeit mark or a mark virtually identical to a previously registered mark.").

### 1. MERCEDES-BENZ Mark

Plaintiff argues the Court should enter summary judgment as to infringement of its

---

[2] A counterfeit mark is defined as "a spurious mark which is identical with, or substantially indistinguishable from, a registered mark." 15 U.S.C. §§ 1116(d)(1)(B), 1127.

MERCEDES-BENZ mark. (MSJ 11.) It is obvious, and Defendants do not even appear to contest, that Defendants sell goods using the MERCEDES-BENZ mark; Defendants advertise products for sale as "Mercedes Benz" wheels. (*See, e.g.*, ECF No. 58-25, at 11 (screenshot of USArim.com selling "Mercedes Benz Wheels").) Defendants use the mark identically. Defendants also sell products that compete with Plaintiff's products.

     a. Likelihood of Confusion

The Court first acknowledges that the issue of likelihood of confusion is inherently factual. *See Fortune Dynamic, Inc. v. Victoria's Secret Stores Brand Mgmt., Inc.*, 618 F.3d 1025, 1039 (9th Cir. 2010) (noting that "'likelihood of confusion is a factual determination,' and 'district courts should grant summary judgment motions regarding the likelihood of confusion sparingly'" (quoting *Thane Int'l, Inc. v. Trek Bicycle Corp.*, 305 F.3d 894, 901–02 (9th Cir. 2002))). But, the Court agrees with other district courts in this state that have approved "summary judgment [on the issue] so long as (1) the ultimate determination of likelihood of confusion is based on a record of undisputed material facts and (2) these undisputed material facts, when applied to the multi-factor likelihood of confusion analysis, demonstrate that there is only one conclusion a trier of fact could reasonably draw." *Health Net v. U.S.A. Healthnet, Inc.*, No. CV 92-3925 KN, 1993 WL 209558, at *1 (C.D. Cal. May 12, 1993) (citing cases).

It is not necessary for the Court to analyze the likelihood of confusion test here considering Defendants' use the identical MERCEDES-BENZ mark. *See Phillip Morris USA Inc. v. Shalabi*, 352 F. Supp. 2d 1067, 1073 (C.D. Cal. 2004) ("[I]n cases involving counterfeit marks, it is unnecessary to perform the step-by-step examination . . . because counterfeit marks are inherently confusing."). However, the Court will address the one *Sleekcraft* factor that Defendants have argued weighs in their favor.

The sixth *Sleekcraft* factor analyzes the type of goods and the degree of care likely to be exercised by the purchaser. This is the factor that Defendants deem the "most important." (Opp'n 6.) Defendants argue consumers research wheels in-depth before making a purchase to ensure the wheel will fit their automobile. (*Id.* at 7.) Defendants

argue because their wheels are "significantly less expensive" than Plaintiff's wheels, a reasonably prudent consumer "will be more discerning and less likely to confuse Defendants' and Plaintiff's products." (*Id.*) Defendants argue a consumer would "discover that Defendants sell aftermarket near-replicas as well as custom wheels." (*Id.*) Indeed, the Ninth Circuit has held that when the accused products are expensive (i.e., selling for several hundred dollars), the relevant consumer "is a reasonably prudent consumer accustomed to shopping online." *Multi Time Machine, Inc. v. Amazon.com, Inc.*, 804 F.3d 930, 936 (9th Cir. 2015) (citing *Toyota Motor Sales, U.S.A., Inc. v. Tabari*, 610 F.3d 1171, 1176 (9th Cir. 2010)).

The Court agrees with Defendants' preliminary argument in that it is plausible that a person buying a wheel rim on the Internet, sight unseen, would do his or her research and look closely at the products. However, even if the hypothetical consumer were to spend time looking at Defendants' products on USArim.com, there is nothing on the website that would ease Plaintiff's concerns of confusion. For some wheels, USArim.com refers to the wheel as a "replica" Mercedes Benz wheel, but this is not always the case. Even if a consumer were to read the entire product description of the wheel on, for example, eBay, that consumer would most likely not be alerted to the fact that the wheel is only a replica.[3] Nor would the consumer be alerted to the fact that Mercedes does not condone the sale of the wheel. Therefore, this factor does not weigh in Defendants' favor and does not negate the likelihood of confusion that is presumed due to Defendants' use of Plaintiff's exact mark on products that compete with Plaintiff's products. *See Brookfield Commc'ns*, 174

---

[3] Plaintiff has included a screenshot of the "About Us" section of USArim.com. This states: "Some of our wholesale partners include . . . Mercedes Benz." (ECF No. 58-19, at 36.) It also states: "We manufacture our wheels in several OEM approved factories through Asia." (*Id.* at 37.) OEM stands for "original equipment manufacturer." Mr. Moalemi admitted he does not "deal with the Mercedes-Benz-approved factory." ("Moalemi Depo.," ECF No. 58-19, at 12.) He testified that the statements from the website mean his company "go[es] through" a company that "do[es] wheels for" Mercedes. (*Id.*) But, there is no evidence that consumers looking at the website would read the statements in this way. The Court finds the statements on the website are likely to confuse consumers as to whether Defendants are linked to or even sponsored by Plaintiff.

F.3d at 1056.  The Court finds Plaintiff has shown there is no disputed fact that a consumer would likely be confused by Defendants' use of Plaintiff's mark.  The Court now analyzes Defendants' arguments opposing the allegation of infringement.[4]

### b. Nominative Fair Use Doctrine

Defendants argue nominative fair use shields them from liability.  (Opp'n 5.) Defendants argue they "primarily use Plaintiff's 'Mercedes-Benz' trademark in its descriptive sense, in order to convey that Defendants' wheels are near-replicas of Mercedes-Benz wheels and that they will generally fit on Plaintiff's vehicles."  (Opp'n 5.) Defendants argue therefore, "a reasonable juror could find that Defendants' use of 'Mercedes-Benz' to identify wheels as replicas is a nominative fair use."  (*Id.*)  The Court first analyzes whether the nominative fair use doctrine applies to this case at all.

"The nominative fair use analysis is appropriate where a defendant has used the plaintiff's mark to describe the plaintiff's product, even if the defendant's ultimate goal is to describe his own product."  *Cairns v. Franklin Mint Co.*, 292 F.3d 1139, 1151 (9th Cir. 2002).  Indeed, in *Volkswagenwerk Aktiengesellschaft v. Church*, 411 F.2d 350 (9th Cir. 1969), an automobile repair business specializing in the repair of Volkswagen and Porsche vehicles placed a large sign on the front of the premises that read "Modern Volkswagen Porsche Service."  *Id.* at 351.  The Ninth Circuit found the alleged infringer was using the "Volkswagen" trademark to describe the automobile, but its ultimate goal was to describe its own product—a repair shop specializing in the repair of Volkswagens.  *Id.* at 352. Application of the nominative fair use analysis was therefore appropriate.  *See Cairns*, 292 F.3d at 1152 (analyzing *Volkswagenwerk*).

_____

[4] Defendants first argue they have used this mark only "to advertise Defendants' own aftermarket/replica wheels online" so likelihood of confusion should be considered only at the time of sale.  (Opp'n 4.) Defendants state the mark "is not seen by the public when the wheels are in use."  (*Id.*)  The Court is unable to determine how this argument combats the allegation of infringement.  Plaintiff has alleged Defendants are using Plaintiff's mark to sell products online, and consumers would clearly see the wheels and the mark online when buying purchasing the products.  It is irrelevant that the words "Mercedes Benz" are not imprinted on the wheel itself.  The Court rejects Defendants' argument as unclear and illogical.

Here, if Defendants' website was worded as Defendants describe to the Court, i.e., "We Sell Replica Mercedes Benz Wheels" or "Our Wheels Look Great on Mercedes-Benz Cars!", then the Court would agree with Defendants that the nominative fair use test applies and proceed to analyze the factors of the test. Certain postings on Defendants' website support Defendants' contention, (*see* ECF Nos. 33-62, 33-63 (USArim.com selling "replica" Mercedes wheel rims), but many do not. USArim.com advertises for sale "17 inch chrome Mercedes Benz wheels rims," (ECF No. 33-63, at 2), and other rims without using the word "replica" in the description. (ECF No. 33-65, at 2; ECF No. 33-67, at 2; ECF No. 33-68, at 2; ECF No. 33-69, at 2.) There is no indication that Defendants are using Plaintiff's "Mercedes-Benz" mark to describe Plaintiff's product. *Contra Smith v. Chanel, Inc.*, 402 F.2d 562 (9th Cir. 1968) (finding the nominative fair use defense applied where the defendant advertised his "2d Chance" perfume as indistinguishable from the trademarked "Chanel #5 perfume"). Defendants are not using the mark to compare their wheels to Plaintiff's wheels, and do not even reference Plaintiff's wheels in the online postings. Defendants are using the mark solely to describe their own products. Therefore, the nominative fair use analysis is not appropriate in this situation.[5] Nominative fair use does not protect Defendants' use of Plaintiff's mark.[6]

### c. Conclusion

The Court acknowledges that in most cases, it is not appropriate to find summary judgment on a likelihood of confusion analysis. However, in this case, when Defendants

---

[5] The court in *Cairns* held that in such a situation (i.e., if the defendant uses the mark to describe the plaintiff's product), courts should analyze infringement using the classic fair use test. 292 F.3d at 1152. Under this defense, "[a] defendant must show that its use is (1) other than as a trademark, (2) descriptive of the defendant's goods, and (3) in good faith." *Marketquest Grp., Inc. v. BIC Corp.*, 862 F.3d 927, 935 (9th Cir. 2017) (citing 15 U.S.C. § 1115(b)(4)). Defendants do not claim the fair use defense applies and have thus not attempted to prove these factors.

[6] In further arguing against trademark infringement, Defendants refer to two sets of wheels that Plaintiff "claims are sold by Defendants." (Opp'n 9.) These are products: MBZ-525-22-blk and MBZ-521-19-GMT. Defendants argue these wheels are sold on Amazon by Wheel Outlet Direct and there is no evidence Defendants operate Wheel Outlet Direct. (*Id.*) This does not negate the fact that Defendants sold other infringing products.

are using Plaintiff's exact trademark with the intent of selling replica products, without always using the word "replica" on the website, the Court finds there is no dispute that Plaintiff has proven a likelihood of confusion.  The Court **GRANTS** Plaintiff's Motion for Summary Judgment for trademark infringement of the MERCEDES-BENZ mark.

### 2. *Three Point Star Mark*

Plaintiff also moves for summary judgment on its claim of trademark infringement of its Three-Point Star mark.  (MSJ 14.)  In 2015, Plaintiff's investigator purchased wheels from USArim.com.  The wheels contain the Three-Point Star mark on the center cap.  (*See* ECF Nos. 33-79, 33-80.)  The Three-Point Star mark on the wheels sold on USArim.com is not altered or changed from Plaintiff's mark in any way.[7]

Plaintiff makes the same arguments as to why the *Sleekcraft* factors weigh in its favor for this mark as it did for the MERCEDES-BENZ mark.  Again, the Court finds it unnecessary to analyze the likelihood of confusion test because the marks are identical.  In response to Plaintiff's allegation of infringement, Defendants argue the first sale doctrine applies.  (Opp'n 8.)

### a. First Sale Doctrine

Defendants appear to acknowledge the end caps on the wheels contain the Three-

---

[7] *Compare*  (ECF No. 33-80 (the product purchased from USArim.com)), *with*



(Plaintiff's registered trademark, U.S. Reg. No. 4,423,458).

Point Star mark.[8] But, Defendants argue they are protected by the first sale doctrine. They state they have purchased "authentic end caps from used Mercedes-Benz dealers" and a jury could conclude that Defendants "only stocked and resold" genuine caps without materially altering them. (Opp'n 8.)

The "first sale" doctrine states that once a product enters the market, its trademark is not infringed by subsequent sales. *See Sebastian Int'l. Inc. v. Longs Drug Stores Corp.*, 53 F.3d 1073, 1074 (9th Cir. 1995) ("Resale by the first purchaser of the original article under the producer's trademark is neither trademark infringement nor unfair competition."). The doctrine protects a purchaser who "does no more than stock, display, and resell a producer's product under the producer's trademark." *Id.* at 1076. The doctrine applies even when there is a likelihood of consumer confusion. *Upper Deck Authenticated, Ltd. v. CPG Direct*, 971 F. Supp. 1337, 1341 (S.D. Cal. 1997) (citing *Sebastian*, 53 F.3d at 1047).

Plaintiff argues this doctrine does not apply to Defendants' sale of the caps because Defendants have not proven the caps are genuine. (Reply 3); *see Sebastian*, 53 F.3d at 1076 (finding the defendants were protected by the doctrine because they "stock and resell genuine" products "lawfully acquired on the open market"). Indeed, the only evidence produced by Defendants that the caps are genuine is a declaration by Mr. Moalemi stating such. ("Moalemi Decl.," ECF No. 70-1, ¶ 5.) There is no evidence to support this declaration, and the declaration is disproven by Plaintiff's evidence. Plaintiff produced a picture of a wheel purchased by its investigator from USARim.com. (ECF No. 33-80, at 2.) This wheel contains an end cap with the three-point star. Plaintiff also produced at oral argument an end cap that came attached to a wheel purchased by Plaintiff's investigator. Plaintiff states its investigator purchased wheels, including the 19-GMT wheel, from Defendants that included the end cap bearing the three-point star design. (MSJ 15.) Plaintiff also included a declaration by Sven-Eric Widmayer, Legal Counsel for Legal

---

[8] The Court, like the Parties, will use "center caps" and "end caps" interchangeably.

16-CV-875-JLS (MDD)

Global Litigation – Brand Protection at Daimler AG. (ECF No. 89-1.) Mr. Widmayer declares "[t]he purchased 20-AMG wheels . . . and the purchased 19-GMT wheels . . . [from USARIM] are not genuine products manufactured or authorized by Daimler." (*Id.* ¶ 9.a.) The wheels use the three-point star mark. (*Id.* ¶¶ 9.b., 9.c.)

The Court has examined the two products produced at oral argument and determines the end cap from Defendants' wheels is clearly different from Plaintiff's end cap. The back of Plaintiff's end cap contains a part number. The back of Defendants' end cap contains a sticker with what appears to be Chinese characters printed on it.[9] These clear differences, along with the evidence and declaration provided by Plaintiff, negate Mr. Moalemi's unsupported declaration that Defendants' end caps are genuine. Therefore, Defendants are not protected by the first sale doctrine. As analyzed above, Plaintiff has proven the marks are identical, thus, the Court **GRANTS** Plaintiff's Motion for Summary Judgment for trademark infringement of the three-point star mark.

### B. Trademark Counterfeiting

To state a valid cause of action for trademark counterfeiting under the Lanham Act, a plaintiff must show that its mark is valid and has been infringed. 15 U.S.C. § 1114(1). Registration of a mark on the principal register is "prima facie evidence . . . of the registrant's ownership of the mark, and of the registrant's exclusive right to use the registered mark in commerce." 15 U.S.C. § 1115(a). The Lanham Act prohibits use of "counterfeit" marks in connection with the "sale, offering for sale, or distribution of goods." 15 U.S.C. § 1116(d)(1)(A). A counterfeit mark is defined as "a spurious mark which is identical with, or substantially indistinguishable from, a registered mark." 15 U.S.C. §§ 1116(d)(1)(B), 1127.

As discussed, Plaintiff has valid trademark registrations for several marks. (FAC ¶ 22.) Furthermore, Plaintiff has proven there is no issue of material fact that Defendants

---

[9] The Court requested the Parties bring in wheels as demonstrative exhibits to the oral argument hearing. (*See* ECF No. 87.) At the hearing, the Court asked if the demonstratives could become part of the record in this matter. Both Parties agreed.

have infringed its Mercedes-Benz mark and three-point star mark and sell and advertise rims using Plaintiff's identical mark. *See supra* Section I.A. Thus, the Court **GRANTS** Plaintiff's Motion for Summary Judgment on its claim of trademark counterfeiting for the Mercedes-Benz mark and the three-point star mark.

## II. Design Patent Infringement

Plaintiff alleges Defendants are infringing U.S. Design Patent No. D542,211 ("the 'D211 patent"). (MSJ 18.)[10] Plaintiff has construed the 'D211 as "the ornamental design for a front face of a vehicle wheel, as shown and described in FIGs. 1–4 of the 'D211 Patent." (*Id*.) Figures 1–4 are reproduced below:



### A. Legal Standard

"A design patent protects the nonfunctional aspects of an ornamental design as shown in the patent." *Elmer v. ICC Fabricating, Inc.*, 67 F.3d 1571, 1577 (Fed. Cir. 1995) (citing *KeyStone Retaining Wall Sys., Inc. v. Westrock Inc.*, 997 F.2d 1444, 1450 (Fed. Cir. 1993)). A design patent is infringed by the "unauthorized manufacture, use, or sale of the

---

[10] The first procedural issue is whether the Court may evaluate a claim of design patent infringement on summary judgment. *See Grayson v. McGowan*, 543 F.2d 79, 80 (9th Cir. 1976) ("It is long established in this circuit that, when the Rule 56 standards are met and the court, without aid of expert opinion, can understand the prior art and patent claims, summary judgment is proper."). The Court finds it can analyze the prior art and patent claims without expert opinion and may thus consider Plaintiff's request for summary judgment. The Court has been provided with both wheel rims at issue and has physically compared them. Neither side has presented any expert opinion to support their position, and the Court finds reference to any outside evidence or opinion is unnecessary in this case.

article embodying the patented design or any colorable imitation thereof." *Goodyear Tire & Rubber Co. v. Hercules Tire & Rubber Co.*, 162 F.3d 1113, 1116–17 (Fed. Cir. 1998).

An analysis of design patent infringement first involves a claim construction. *See Seirus Innovative Accessories, Inc. v. Cabela's Inc.*, 827 F. Supp. 2d 1150, 1155 (S.D. Cal. 2011) ("A determination of design patent infringement involves a two step analysis. First, the claim must be properly construed to determine its meaning and scope. Secondly, the properly construed claim must be compared to the accused design to determine whether there has been infringement." (citing *Elmer*, 67 F.3d at 1577)).

### B. First Step: Claim Construction

Regarding the first step, "[w]ords cannot easily describe ornamental designs." *Sport Dimension, Inc. v. Coleman Co., Inc.*, 820 F.3d 1316, 1320 (Fed. Cir. 2016). "A design patent's claim is thus often better represented by illustrations than a written claim construction." *Id.* (citing *Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665, 679 (Fed. Cir. 2008) (en banc)). Further, "a design patent cannot claim a purely functional design— a design patent is invalid if its overall appearance is 'dictated by' its function." *Sport Dimension*, 820 F.3d at 1320 (quoting *Egyptian Goddess, Inc.*, 543 F.3d at 668)). But as long as the design is not primarily functional, "the design claim is not invalid, even if certain elements have functional purposes." *Ethicon Endo–Surgery, Inc. v. Covidien, Inc.*, 796 F.3d 1312, 1333 (Fed. Cir. 2015) (citing *Richardson v. Stanley Works, Inc.,* 597 F.3d 1288, 1293–94 (Fed. Cir. 2010)). That is because a design patent's claim protects an article of manufacture, which "necessarily serves a utilitarian purpose." *L.A. Gear, Inc. v. Thom McAn Shoe Co.*, 988 F.2d 1117, 1123 (Fed. Cir. 1993). A design may contain both functional and ornamental elements, even though the scope of a design patent claim "must be limited to the ornamental aspects of the design." *Ethicon Endo–Surgery,* 796 F.3d at 1333.

Plaintiff's proposed construction is "the ornamental design for a front face of a vehicle wheel, as shown and described in FIGs. 1–4 of the '211 Patent." Defendants do not address this construction or offer an alternative construction. The Court finds this

construction properly "factors out the functional aspects" of the patent design. *Richardson v. Stanley Works, Inc.*, 597 F.3d 1288, 1294 (Fed. Cir. 2010); *see also Contessa Food Prods., Inc. v. Conagra, Inc.*, 282 F.3d 1370, 1377 (Fed. Cir. 2002) (approving a district court's construction of the asserted claim as meaning "a tray of a certain design as shown in Figures 1–3"). The Court finds that any further "verbal elaboration" in the claim is not "necessary or helpful" and adopts the proposed construction. *See Egyptian Goddess*, 543 F.3d at 679.

### C. Second Step: Infringement

Defendants argue there are "a number of significant differences between the accused and protected designs." (Opp'n 9.) These differences recognized by Defendants are: First, Plaintiff's design "has a sharp drop from the outer, upper rim to the lower, inner rim" but Defendants' design "has a sloping decline from the outer, upper rim of the wheel that suddenly drops to the lower, inner rim of the wheel." (Opp'n 11.) Second, Defendants' design has spokes that "are completely smooth along their sides, meeting with the outer rim in such a way that the bottom of the spokes appear to be resting on the top of the lower, inner rim of the wheel" but Plaintiff's design has spokes that "are not completely smooth along their sides, and appear to have edges or layers to their appearance." (*Id.*) Third, the spokes on Defendants' design "rest[] upon" the "rim below the bottom of the lower, inner rim" but the spokes of Plaintiff's design "merge with the rim below the bottom of the lower, inner rim." (*Id.*)

Overall, the Court considers whether the visual similarity between Defendants' product and the patented designs would likely deceive an ordinary observer. Infringement of a design patent occurs if "the designs have the same general visual appearance, such that it is likely that the purchaser would be deceived into confusing the design of the accused article with the patented design." *Goodyear*, 162 F.3d at 1118. Complete similarity is not required to find infringement, and "minor changes in a design are often readily made without changing its overall appearance." *Id.* at 1117.

The proper test for infringement of a design patent is whether the ordinary observer,

"giving such attention as a purchaser usually gives" and viewing any differences between the patented design and the accused product "in the context of the prior art," finds that the devices bear such resemblance as to deceive the observer, inducing him or her "to purchase one supposing it to be the other." *Egyptian Goddess*, 543 F.3d at 670 (internal quotations omitted) (quoting *Gorham Mfg. Co. v. White*, 81 U.S. 511, 528 (1871)). When the products are not "plainly dissimilar," examination of the prior art might reveal differences between the designs at issue that are unnoticeable "in the abstract," but significant in the context of the prior art. *Id.* This requires a court to first determine if the products are similar and second to compare the designs to prior art. *Great Neck Saw Mfrs., Inc. v. Star Asia U.S.A., LLC*, 727 F. Supp. 2d 1038, 1052 (W.D. Wash. 2010) (citing *Egyptian Goddess*, 53 F.3d at 678). "In both stages, the appropriate method involves a side-by-side study of the designs." *Id.* (citing *Crocs, Inc. v. Int'l Trade Comm'n*, 598 F.3d 1294, 1304 (Fed. Cir. 2010)).

Following *Egyptian Goddess*'s two-tiered approach, first, the Court finds the claimed and accused designs are sufficiently similar. In the picture below, the left image is the ''D211 patent and the right image is a product sold by Defendants on eBay, with part number MBZ-610-19-MB.

 

The Court finds Plaintiff's patented design and Defendants' accused product to be substantially similar. Indeed, Defendants implicitly acknowledge this by pointing the Court to only three minor differences between their product and the patented design. (Opp'n 11.) The Court proceeds to the second tier of the *Egyptian Goddess* test, which entails a comparison to the prior art.

Defendants argue the shared portions of their product and the claimed design is "five sets of two spokes forming a wide angled 'V' shape that parallels another set of spokes on each end" and this is also shared by the prior art. (Opp'n 13.) Defendants argue an ordinary observer must therefore "disregard the impression caused by the five sets of two spokes" and focus "only on the impression left by *the other parts* of each design." (*Id.*)

Like the patented design and Defendants' product, the cited prior art contains five spokes in a starfish pattern that connect to an outer circle. A comparison is set forth below:



| Prior Art (SMF ¶ 6.) | 'D211 Patent (SMF ¶ 5.) | MBZ-610-19-MB (SMF ¶ 25.) |
|---|---|---|
| (Wright D564.) | FIG.1 | |
| (Weld D547.) | FIG.1 | |
| (Hussaini D618.) | FIG.1 | |

(*See* MSJ 21.)

"[W]hen a claimed design is close to the prior art, the Court may view small differences between the claimed design and the accused device as being important to the eye of the hypothetical ordinary observer." *Great Neck*, 727 F. Supp. 2d at 1053 (citing *Egyptian Goddess*, 543 F.3d at 676). Of course, the Court must "analyz[e] the design as a

whole" and not engage in an "element-by-element comparison" of the devices in question. *Amini Innovation Corp. v. Anthony California, Inc.*, 439 F.3d 1365, 1372 (Fed. Cir. 2006). But, "where a particular design element sharply distinguishes, against the context of the prior art, the claimed design from the accused design, it is not error to focus on that element in the infringement analysis." *Wing Shing Prods (BVI) Co. Ltd. v. Sunbeam Prods., Inc.*, 665 F. Supp. 2d 357, 367 (S.D.N.Y. 2009) (citing *Egyptian Goddess*, 543 F.3d at 680–83). The prior art, as a "frame of reference," can "highlight the distinctions between the claimed design and the accused design as viewed by the ordinary observer." *Egyptian Goddess*, 543 F.3d at 677.

The Court has visually compared the two products, the pictures and figures of the products, and the prior art. The Court finds that the accused device and the claimed design are substantially similar. An ordinary observer would be deceived and could be induced to purchase Defendants' product over Plaintiff's. There are no sharp distinguishing features between the two designs against the context of the prior art. Plaintiff has therefore met its burden in proving design patent infringement. The Court **GRANTS** Plaintiff's Motion for Summary Judgment for design patent infringement of the 'D211 patent.

## III. Liability of Defendants

Defendants argue "[n]one of the named Defendants have sold any of the accused infringing products for many years" and Rasool Moalemi "has never sold any products on an individual basis." (Opp'n 2 n.1.)

### A. Liability of Rasool Moalemi

Mr. Moalemi admits that he owns the company ABC Wheels (which is not a defendant in this case) and the company "has been a business under the name 'UsaRim' and the website 'usarim.com.'" (Moalemi Decl. ¶ 3.) He states he has never sold any products on an individual basis. (*Id.* ¶ 2.) Plaintiff argues Mr. Moalemi's conduct abuses the separation between himself and the company and enables him "to be held liable for the trademark infringement and counterfeiting and design patent infringement of the Entity Defendants and ABC Wheels." (Reply 3.)

*1. Piercing the Corporate Veil*

In broad summary, Plaintiff argues Mr. Moalemi is the alter ego of his company. The alter ego theory is an equitable doctrine based on California Civil Code 3528. *See Webber v. Inland Empire Invs.*, 74 Cal. App. 4th 884, 900 (Ct. App. 1999). Under the alter ego doctrine, "where a corporation is used by an individual or individuals, or by another corporation, to perpetrate fraud, circumvent a statute, or accomplish some other wrongful or inequitable purpose, a court may disregard the corporate entity and treat the corporation's acts as if they were done by the persons actually controlling the corporation." *Id*. Thus, a party asserting the doctrine must show two requirements: "(1) a unity of interest and ownership such that the separate personalities of the corporation and the individual no longer exist; and (2) that an inequitable result will follow if the acts are treated as those of the corporation alone." *Id.* at 899. The California Supreme Court has stated that "the corporate form will be disregarded only in narrowly circumscribed circumstances and only when the ends of justice so require." *Mesler v. Bragg Mgmt. Co.*, 702 P.2d 601, 607 (Cal. 1985).

Plaintiff argues "[t]he facts establish that Rasool Moalemi has/had such a unity of interest and ownership in the Entity Defendants and ABC Wheels that Rasool Moalemi and the Entity Defendants and/or ABC Wheels did/do not exist as separate entities." (Reply 3.) Plaintiff has not put forth evidence to support this allegation, merely concluding that "[t]he facts" support its argument. (*Id.*) Thus, the Court finds that piercing the corporate veil is not appropriate here because there are not sufficient facts to demonstrate a unity of interest between Mr. Moalemi and the companies. The Court next analyzes whether Mr. Moalemi was personally involved in the allegedly infringing activity. *See Gajo v. Chi. Brand*, No. 17-cv-380-EMC, 2017 WL 2473142, at *4 (N.D. Cal. June 8, 2017) (holding personal liability for trademark infringement can stem from either alter ego liability *or* direct participation in the tort); *Orthokinetics, Inc. v. Safety Travel Chairs, Inc.*, 806 F.2d 1565, 1579 (Fed. Cir. 1986) ("[C]orporate officers who actively aid and abet their corporation's infringement may be personally liable for inducing infringement under [35

U.S.C.] § 271(b) regardless of whether the corporation is the alter ego of the corporate officer.").

### 2. Personal Liability for Trademark Infringement

Corporate officers are "personally liable for [a] corporation's . . . trademark infringements when they are a 'moving, active conscious force' behind the corporation's infringement." *Novell, Inc. v. Unicom Sales, Inc.*, No. C-03-2785 MMC, 2004 WL 1839117, at *17 (N.D. Cal. Aug. 17, 2004) (citing cases). The officer must "personally take part in infringing activities or specifically direct employees to do so." *Transgo, Inc. v. Ajac Transmission Parts Corp.*, 768 F.2d 1001, 1021 (9th Cir. 1985); *Hewlett-Packard Co. v. Repeat-O-Type Stencil Mfg. Corp.*, No. C-92-3330 DLJ, 1995 WL 552168 (N.D. Cal. Aug. 30, 1995) ("If an individual actively and knowingly caused the trademark infringement, he is personally responsible. Specifically, a corporate officer who directs, controls, ratifies, participates in, or is the moving force behind the infringing activity, is personally liable for such infringement without regard to piercing of the corporate veil." (internal citation and quotations omitted)).

It is undisputed that Mr. Moalemi owns a company that operates at least one of the accused websites. Mr. Moalemi testified he operates the username USArim on Amazon.com and he writes the descriptions of products sold by USArim on Amazon. (ECF No. 58-22, at 3.) He testified he sets the price for the wheels sold on Amazon. (*Id.* at 6.) He testifies he instructs his employee ("John Doe") what products to list and remove on the USArim website. (ECF No. 58-19, at 13.) Mr. Moalemi clearly controlled the company's actions in posting products online, listing products on third party sites, and running the website. As detailed above, at least some of the products Defendants list online infringe Plaintiff's trademark. Plaintiff has proven there is no disputed fact that Mr. Moalemi's involvement in the allegedly infringing activity is sufficient to find him personally liable for the activity. The Court finds Mr. Moalemi may be found personally liable for trademark infringement.

/ / /

### 3. Personal Liability for Patent Infringement

"[O]fficers of a corporation are personally liable for tortious conduct of the corporation if they personally took part in the commission of the tort or specifically directed other officers, agents, or employees of the corporation to commit the tortious act." *Orthokinetics*, 806 F.2d at 1579. As noted above, Mr. Moalemi testified he listed the products on Amazon and directed others as it relates to listing products on his website USARim.com. This shows he was personally involved in committing the acts, and thus can be liable for patent infringement. The Court finds Mr. Moalemi may be found personally liable for design patent infringement.

## B. Entity Defendants

The Court now determines whether the Entity Defendants are liable for infringement. Defendants state "Infobahn International, Inc. was dissolved in 2011, A-Z Wheels LLC was dissolved in 2013, Galaxy Wheels & Tires, LLC was dissolved in 2015, and Eurotech Wheels was never a separate entity but simply was one of many trade names used in the past." (Opp'n 2 n.1.) Plaintiff acknowledges Infobahn was dissolved in 2012, but state the USArim domain name was registered on behalf of "Eurotech" starting in June 2013. ("Pl. Facts," ECF No. 58-2, ¶ 12; *see* Moalemi Depo. 3–4 (testifying that he operated under the name Eurotech).) Mr. Moalemi testified he operated under USArim, and USArim.com, which is "our bread and butter . . . our website." (Moalemi Depo. 4.) USArim.com "[s]tarted from Infobahn International" in 2010 or 2011. (*Id.*)

The lines between the various entities are blurred; some operated at certain times but then blended into other entities, some of which dissolved. Mr. Moalemi stated his business operated under many names because of the "nature of [the] business" and he hoped to "attract as many people as we can." (*Id.* at 3–4.) He operated under many names "just to bring people in." (*Id.* at 4.)

In *Penasquitos, Inc. v. Superior Court*, 812 P.2d 154 (Cal. 1991), the California Supreme Court held that under California Corporations Code § 2010, a corporation may be sued for actions taken after the corporation has dissolved. In *Penasquitos,* the court held

that post-dissolution claims against dissolved corporations can be brought with respect to pre-dissolution, not post-dissolution, activities. "There is no legal barrier to a suit against a dissolved corporation itself for injury or damage that is caused by the corporation's predissolution activities but occurs or is discovered after the dissolution." *Id.* at 1194.

Plaintiff states that although Infobahn was dissolved in 2012, the domain name for the USArim website was registered on behalf of Eurotech starting in June 2013. (Pl. Facts ¶ 12.) Defendants do not seem to dispute this, only arguing "Eurotech Wheels was never a separate entity but simply one of the many trade names used in the past." (Opp'n 2.) There also appears to be no dispute that USArim.com is still operating. Any claims regarding actions taken by an Entity Defendants post-dissolution are barred under *Penasquitos.* The Court finds the Entity Defendants may be found liable for any infringing activity that occurred pre-dissolution.

## CONCLUSION

For the foregoing reasons, the Court **GRANTS** Plaintiff's Motion for Summary Judgment in its entirety.[11]

**IT IS SO ORDERED.**

Dated: August 13, 2018

Hon. Janis L. Sammartino
United States District Judge

---

[11] Plaintiff's complaint alleges infringement of multiple marks and patents, and the Motion for Summary Judgment was only partial and covered the claims discussed herein, Plaintiff **SHALL** file a notice within ten (10) days of the date this Order is docketed informing the Court how it wishes to proceed on the remaining claims.