1
2
3
4
5
6
7
8           UNITED STATES DISTRICT COURT
9           SOUTHERN DISTRICT OF CALIFORNIA
10

| | |
|---|---|
| 11  DAIMLER AG, a German corporation, | Case No.: 16-CV-875-JLS (MDD) |
| 12                             Plaintiff, | **ORDER GRANTING IN PART AND** |
| 13  v. | **DENYING IN PART PLAINTIFF'S** |
| 14  A-Z WHEELS LLC d/b/a | **MOTION FOR PARTIAL** |
| 15  USARim.COM, et al., | **SUMMARY JUDGMENT** |
| 16                           Defendants. | (ECF No. 120) |
| 17 | |

18          Presently before the Court is Plaintiff Daimler AG's Motion for Partial Summary

19  Judgment ("Mot.," ECF No. 120).  Also before the court is Defendants A-Z Wheels LLC

20  d/b/a USArim, USArim.com, and Eurotech Wheels; Galaxy Wheels & Tires, LLC;

21  Infobahn International, Inc. d/b/a Infobahn, Eurotech, Eurotech Luxury Wheels, Eurotech

22  Wheels, and USArim (collectively, the "Entity Defendants"); and Rasool Moalemi's

23  (collectively, "Defendants")[1] Opposition to ("Opp'n," ECF No. 122) and Plaintiff's Reply

24  in Support of ("Reply," ECF No. 123) the Motion.  The Court took the matter under

25  submission without oral argument.  *See* ECF No. 124.  Having carefully considered the

26
27  ───────────────
28  [1] Although Plaintiff also asserts claims against several additional individuals, they are not included in the present Motion.

1

Parties' arguments and evidence and the relevant law, the Court **GRANTS IN PART AND DENIES IN PART** the Motion.

### BACKGROUND

Plaintiff Daimler AG produces "premier luxury automotive vehicles and parts," including wheels. First Amended Complaint ("FAC," ECF No. 33) ¶ 3. Plaintiff produces and sells worldwide "its vehicles and related parts under the distinctive Mercedes-Benz brand." *Id.* ¶ 17. Plaintiff owns federal trademark and service mark registrations for various marks; the marks relevant to the present Motion are the MERCEDES-BENZ and the "Three-Point Star" marks:



*Id.* ¶¶ 19, 22. Plaintiff states that it uses the mark MERCEDES-BENZ in connection with advertising and selling vehicles and goods. *Id.* ¶ 19. Plaintiff also uses the Three-Point Star marks "in connection with advertising and selling Mercedes-Benz vehicles and/or related goods and services." *Id.* Plaintiff further owns various design patents, including, as relevant to the present Motion, U.S. Design Patent No. D542,211 ("the 'D211 patent"). *Id.* ¶ 35.

Plaintiff claims Defendants are using Plaintiff's trademarks "in connection with the manufacture, offer for sale, sale and distribution of wheels which are not manufactured, authorized or sold by" Plaintiff. *Id.* ¶ 1. Plaintiff also claims Defendants are reproducing, manufacturing, selling, and distributing wheels "which blatantly copy issued design patents in various distinctive and artistic wheel designs owned by" Plaintiff. *Id.*

On January 5, 2018, Plaintiff moved for partial summary judgment against Defendants on its trademark infringement and counterfeiting claim and its design patent infringement claim. *See generally* ECF No. 58. Following briefing and oral argument on the motion, *see* ECF No. 90, on August 13, 2018, the Court granted Plaintiff's motion for partial summary judgment in its entirety, *see generally* ECF No. 91. In light of the Court's

2

ruling, Plaintiff subsequently filed the present Motion, for partial summary judgment for statutory damages, injunctive relief, and attorney's fees.  *See generally* ECF No. 120.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 56(a), a party may move for summary judgment as to a claim or defense or part of a claim or defense.  Summary judgment is appropriate where the Court is satisfied that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  Material facts are those that may affect the outcome of the case.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A genuine dispute of material fact exists only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*  When the Court considers the evidence presented by the parties, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255.

The initial burden of establishing the absence of a genuine issue of material fact falls on the moving party.  *Celotex*, 477 U.S. at 323.  The moving party may meet this burden by identifying the "portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,'" that show an absence of dispute regarding a material fact.  *Id.*  When a plaintiff seeks summary judgment as to an element for which it bears the burden of proof, "it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial." *C.A.R. Transp. Brokerage Co. v. Darden Rests.*, Inc., 213 F.3d 474, 480 (9th Cir. 2000) (quoting *Houghton v. South*, 965 F.2d 1532, 1536 (9th Cir. 1992)).

Once the moving party satisfies this initial burden, the nonmoving party must identify specific facts showing that there is a genuine dispute for trial.  *Celotex*, 477 U.S. at 324.  This requires "more than simply show[ing] that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  Rather, to survive summary judgment, the nonmoving party must "by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,'

16-CV-875-JLS (MDD)

designate 'specific facts'" that would allow a reasonable fact finder to return a verdict for the non-moving party. *Celotex*, 477 U.S. at 324; *Anderson*, 477 U.S. at 248. The non-moving party cannot oppose a properly supported summary judgment motion by "rest[ing] on mere allegations or denials of his pleadings." *Anderson*, 477 U.S. at 256.

## ANALYSIS

In its Motion, Plaintiff requests that the Court: (1) find Defendants' conduct willful and award the maximum amount of statutory damages under 15 U.S.C. § 1117(c)(2) of $6,000,000 ($2,000,000 for each of the three counterfeit marks), or, alternatively, award the maximum amount of statutory damages under 15 U.S.C. § 1117(c)(1) of $600,000 ($200,000 for each of the three counterfeit marks); (2) grant a permanent injunction against Defendants; and (3) grant attorney's fees in favor of Plaintiff because the case is "exceptional" under 15 USC § 1117(a). *See generally* Pl.'s Br. in Support of Mot. ("Br.," ECF No. 120-31). The Court addresses below each of Plaintiff's requests.

## I.    Statutory Damages

In a case involving goods sold with a counterfeit trademark, a plaintiff may elect to recover statutory damages instead of profits and actual damages. 15 U.S.C. § 1117(c). When the counterfeiting is not willful, statutory damages should be awarded in the amount of "not less than $1,000 or more than $200,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed." 15 U.S.C. § 1117(c)(1). If the use of the counterfeit mark is willful, however, the court should award "not more than $2,000,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed*." Id.* § 1117(c)(2). "District courts have discretion in determining the amount of statutory damages, subject only to the statutory minimum and maximum" outlined under section 1117(c). *Coach Services, Inc. v. YNM*, Inc., 2011 WL 1752091, at *5 (C.D. Cal. May 6, 2011); *see also Harris v. Emus Records Corp.*, 734 F.2d 1329, 1335 (9th Cir. 1984) (stating that district courts have "wide discretion in determining the amount of statutory damages to be awarded, constrained only by the specified maxima and minima" while interpreting a similarly-worded copyright infringement provision).

4

"While a plaintiff in a trademark or copyright infringement suit is entitled to damages that will serve as a deterrent, it is not entitled to a windfall." *Adobe Sys., Inc. v. Tilley*, No. 09–01085–PJH, 2010 WL 309249, at \*5 (N.D. Cal. Jan. 19, 2010). An award of the statutory maximum "should be reserved for trademark infringement that is particularly egregious, involves large amounts of counterfeit goods, or is otherwise exceptional." *Ill. Tool Works Inc. v. Hybrid Conversions, Inc.*, 817 F. Supp. 2d 1351, 1356 (N.D. Ga. 2011) (citing *Microsoft Corp. v. Gordon*, No. 1:06–CV–2934–WSD, 2007 WL 1545216 (N.D. Ga. May 24, 2007)).

A defendant acts willfully "if he knows his actions constitute an infringement." *Rolex Watch USA Inc. v. Meece*, 158 F.3d 816, 826 (5th Cir. 1998) (quoting *Broad. Music, Inc. v. Xanthas, Inc.*, 855 F.2d 233, 236 (5th Cir. 1988)). Willfulness is established when there is evidence that the defendant acted knowingly or "willfully blinded himself to facts that would put him on notice that he was infringing another's trademarks." *Philip Morris USA Inc. v. Liu*, 489 F. Supp. 2d 1119, 1123 (C.D. Cal. 2007); *see also Herman Miller, Inc. v. Alphaville Design, Inc.*, No. C 08-03437 WHA, 2009 WL 3429739, at \*9 (N.D. Cal. Oct. 22, 2009) ("Willful infringement occurs when the defendant knowingly and intentionally infringes on a trademark."); *Hard Rock Cafe Licensing Corp. v. Concession Servs.*, 955 F.2d 1143, 1149 (7th Cir. 1992) ("To be willfully blind, a person must suspect wrongdoing and deliberately fail to investigate."). Whether infringement is willful is a heavily fact-dependent inquiry. *See Moroccanoil, Inc. v. Groupon, Inc.*, 278 F. Supp. 3d 1157, 1165 (C.D. Cal. 2017) (finding a triable issue of material fact as to whether the defendant acted willfully because "all of these issues concerning [defendant's] state of mind are highly fact-intensive, and there [was] sufficient evidence to create a triable issue").

Courts have considered the following factors when deciding willfulness:

> (1) whether the same conduct underlying the Lanham Act violation also resulted in the defendant's [criminal] conviction for trafficking counterfeit goods; (2) whether the defendant continued to import counterfeit [goods] after Customs

seized similar goods; (3) the quantity of counterfeit goods imported; (4) whether the defendant ceased using the counterfeit goods upon receiving notice of the infringing nature of his conduct; (5) whether the defendant believed in good faith that his use of a trademark was lawful; (6) the purchase price of counterfeit goods; (7) whether the defendant attempted to verify the authenticity of goods; (8) whether the defendant boasted about his infringement conduct to others; and (9) whether the defendant actively defended against the infringement claims.

*Philip Morris USA Inc. v. Lee*, 547 F. Supp. 2d 685, 694 (W.D. Tex. 2008) (citations omitted).

Here, Plaintiff contends that Defendants acted willfully when they infringed the Three-Point Star marks and seeks the maximum statutory damages award of $2,000,000 for each of the marks.  Br. at 5–7.  Plaintiff relies on *Chloe SAS v. Sawabeh Information Services Company*, where the court granted summary judgment on the issue of willfulness because the defendants "continued to permit the sale of counterfeit goods . . . in direct disregard of [the] court's order to stop the activities."  Br. at 6–7 (citing No. CV1104147MMMMANX, 2015 WL 12763541, at *1 (C.D. Cal. June 22, 2015)).  Defendants have continued to offer for sale, through the website www.usarim.com ("USARim website"), automotive wheels associated with center caps bearing marks that are identical or substantially indistinguishable from Plaintiff's Three-Point Star marks.  *See* Separate Statement of Undisputed Material Facts ("Undisputed Facts," ECF No. 120-1) ¶¶ 12, 21.  Defendants and Plaintiff all concede that some of the wheels purchased were stamped "NOT OEM."  *See id.* ¶¶ 19, 21.

While these facts are undisputed, the Court finds they do not establish willfulness as a matter of law.  Defendants have proffered evidence that is sufficient to raise a triable issue of material fact concerning Defendants' state of mind.  Specifically, Defendants adduce evidence that adds to or provides context for the undisputed facts and that, if believed, could support a reasonable jury finding of non-willfulness.  For example, Defendants argue that "USARim is in fact following this Court's instruction about how to

6

avoid infringement" by indicating "replica" prominently in connection with the goods bearing the MERCEDES-BENZ mark. Opp'n at 3. Further, Defendants argue that their sampled wheels are stamped "NOT OEM" on the metal arm, which supports "the fact that Defendants' customers are fully informed and knowledgeable that the wheels are replicas." *Id.* at 4. This language did not appear on Defendants' products before the Court issued its order on Plaintiff's motion for partial summary judgment on the liability issues, so a reasonable jury could find that Defendants have made these changes in an attempt to obey the Court's order and cease their infringement.

Furthermore, *Chloe SAS* is distinguishable from the present facts. In *Chloe SAS*, the court held that the defendants acted willfully by linking words like "replica" and "fake" to their online postings for the counterfeit goods "notwithstanding an order to cease." 2015 WL 12763541, at *7–12. The court stated that the defendants offered no evidence on summary judgment to demonstrate that "they might have reasonably thought that [their] proposed usage was not barred by statute." *Id.* at *9 (citations omitted). First, Defendants here have not yet been enjoined, unlike the defendants in *Chloe SAS*. *See id.* at *6. Second, here, Defendants contend that, by adding "replica" in connection with the goods after the Court's finding of partial summary judgment in favor of Plaintiff on the issue of liability, Defendants were attempting in good faith to follow the Court's instruction. Opp'n at 2. Defendants point out that the word "replica" appears forty-four times in Plaintiff's exhibits. *Id.* at 3. Unlike in *Chloe SAS*, this Court's prior order did not include an explicit finding that "'replica goods' are synonymous with 'counterfeit goods.'" 2015 WL 12763541, at *8. Third, Defendants assert the wheels are now stamped with "NOT OEM" to ensure that Defendants' customers "are fully informed and knowledgeable that the wheels are replicas." Opp'n at 4. Again, in light of the fact that this language did not appear on Defendants' products prior to the Court's partial summary judgment order, a reasonable jury could conclude that Defendants have altered their labeling and marketing in an effort to comply with the Court's order and avoid infringement. Thus, the Court cannot agree

/ / /

1  with Plaintiff that there is no material factual dispute as to whether Defendants' continued
2  infringement is willful.

3       Plaintiff also asserts that "Defendants have continued to offer for sale, through the
4  USARim website, automotive wheels associated with center caps bearing marks that are
5  identical or substantially indistinguishable from Daimler's Three-Point Star marks [as
6  shown in Exhibits E-M]."  Undisputed Facts ¶ 12.  Defendants argue that these sales are
7  not infringing because Plaintiff's exhibits now only show genuine center caps obtained
8  from used wheels.  *See* Opp'n at 2.  The Court previously held that the first sale doctrine
9  was inapplicable to Defendants' sales because Plaintiff provided sufficient evidence and
10 declarations negating Mr. Maolemi's unsupported declaration that Defendants' caps
11 bearing Plaintiff's marks are genuine.  *See* ECF No. 91 at 12.  Once again, Mr. Maolemi
12 asserts that Defendants no longer sell any non-genuine center caps.  *See* Declaration of
13 Russ Moalemi (ECF No. 122-1) ¶ 5.  In reply, Plaintiff provides a brief declaration from
14 Sven-Eric Widmayer, Legal Counsel for IP Enforcement at Daimler Brand & IP
15 Management GmbH & Co. KG (a wholly owned subsidiary of Plaintiff), who opines "that
16 they are not sales or resales of genuine Daimler parts."  Declaration of Sven-Eric Widmayer
17 (ECF No. 123-1) ¶¶ 1, 3.  The Court is not prepared on this record to conclude that there
18 is no issue of material fact as to whether Defendants have continued to sell unauthentic
19 parts.  Previously, the Court relied to a significant extent on physical products in
20 concluding that Defendants' products were not genuine.  *See* ECF No. 91 at 10–12.  The
21 Court cannot conclusively find, based solely on the pictures submitted by Plaintiffs, that
22 Defendants have continued to sell non-genuine center caps.

23      In sum, the Court finds that the extent of Defendants' infringement following the
24 Court's partial summary judgment order is unclear, as Defendants' sale of genuine center
25 caps would not constitute infringement.  *See NEC Electronics v. CAL Circuit Abco*, 810
26 F.2d 1506, 1509 (9th Cir. 1987) (citations omitted) ("Trademark law generally does not
27 reach the sale of genuine goods bearing a true mark even though such sale is without the
28 mark owner's consent."); *Sebastian Int'l, Inc. v. Longs Drug Stores Corp.*, 53 F.3d 1073,

8

1076 (9th Cir. 1995) (holding that the first sale doctrine shielded the defendant from liability for reselling plaintiff's genuine products acquired on the open market). Furthermore, given the changes Defendants have made in the marketing and labeling of their products after the Court's order on liability, there remains a question of material fact as to whether Defendants "might have reasonably thought that [their] proposed usage was not barred by statute." *Chloe SAS*, 2015 WL 12763541, at *9 (citations omitted). Accordingly, whether Defendants' actions amount to willfulness should be decided by a jury and cannot be decided on summary judgment.

Plaintiff argues in the alternative that it is entitled to statutory damages of "up to $600,000 ($200,000 per counterfeit mark)." Br. at 2. Defendants contend that the issue of statutory damages in infringement cases is an issue reserved for the jury. Opp'n at 4–5. On the record before it, the Court must agree with Defendants. Although requests for statutory damages at the statutory minimum have been decided on summary judgment, it seems other courts within the Ninth Circuit have held that, where the plaintiff seeks more than the statutory minimum—and particularly where, as here, the plaintiff seeks significantly more—the quantum of statutory damages should be determined by the jury. *See, e.g.*, *Louis Vuitton Malletier, S.A. v. Akanoc Sols., Inc.*, No. C 07-03952, 2010 WL 5598337, at *13 (N.D. Cal. Mar. 19, 2010) (holding that the court did not err in permitting the jury to determine the amount of statutory damages under the Lanham Act "[i]n light of clear law permitting juries to decide the amount of statutory damages under both the Copyright Act and Lanham Act."), *aff'd in part, vacated in part, remanded*, 658 F.3d 936 (9th Cir. 2011); *Curtis v. Illumination Arts, Inc.*, 957 F. Supp. 2d 1252, 1259–60 (W.D. Wash. 2013) (denying motion for summary judgment on issue of statutory damages because, "[e]ven considering Plaintiffs' undisputed evidence in favor of an award of the statutory maximum, the selection of such an award requires the exercise of discretion by the fact finder."); *see also Dream Games of Ariz., Inc. v. PC Onsite*, 561 F.3d 983, 992 (9th Cir. 2009) ("If statutory damages are elected, the jury has wide discretion in determining the amount of statutory damages to be awarded, constrained only by the specified maxima

9

16-CV-875-JLS (MDD)

1    and minima.").  Accordingly, the Court **DENIES** Plaintiff's request for partial summary

2    judgment on statutory damages.

3    **II.    Attorney's Fees**

4           Section 35 of the Lanham Act authorizes the court to award attorney's fees in

5    "exceptional circumstances."  15 U.S.C. § 1117(a).  In *Octane Fitness, LLC v. ICON*

6    *Health & Fitness, Inc.*, the Supreme Court held that "district courts may determine whether

7    a case" under the Patent Act—which contains identical language to the Lanham Act—"is

8    exceptional in the case-by-case exercise of their discretion, considering the totality of the

9    circumstances."  572 U.S. 545, 553 (2014).  The Supreme Court cited with approval a

10   "'nonexclusive' list of 'factors'" adopted in *Fogerty v. Fantasy, Inc.*, 510 U.S. 517 (1994),

11   that courts could consider in assessing the totality of the circumstances, "including

12   'frivolousness, motivation, objective unreasonableness (both in the factual and legal

13   components of the case) and the need in particular circumstances to advance considerations

14   of compensation and deterrence.'" *Octane Fitness*, 572 U.S. at 554 n.6 (quoting *Fogerty*,

15   510 U.S. at 534 n.19).

16          Recognizing that *Octane Fitness* changed the standard for fee shifting under the

17   Lanham Act, the Ninth Circuit subsequently held that district courts should examine the

18   totality of the circumstances, "exercis[e] equitable discretion in light of the nonexclusive

19   factors identified in *Octane Fitness* and *Fogerty*, and us[e] a preponderance of the evidence

20   standard" in determining whether a case is "exceptional" and merits an award of fees.

21   *SunEarth, Inc. v. Sun Earth Solar Power Co.*, 839 F.3d 1179, 1181 (9th Cir. 2016).

22   "[L]itigation brought in bad faith or with objectively baseless claims may be considered

23   exceptional, as may litigation demonstrating inequitable conduct or willful infringement."

24   *Sophia & Chloe, Inc. v. Brighton Collectibles*, *Inc.*, No. 12-CV-2472-AJB-KSC, 2019 WL

25   1429588, at *7 (S.D. Cal. Mar. 29, 2019).

26          Here, Plaintiff requests attorney's fees in addition to statutory damages.  Mot. at 2.

27   Applying the totality of the circumstances to the facts and evidence currently before the

28   Court, the Court does not find that Plaintiff has met its burden by a preponderance of the

evidence to establish that the case is exceptional, warranting an award of attorney's fees. Although the Court has ordered Defendants to pay Plaintiff's reasonable costs and fees in connection with Plaintiff's motion for sanctions, ECF Nos. 60, 62, Defendants' discovery noncompliance does not alone suffice to make the case exceptional. *See San Diego Comic Convention v. Dan Farr Prods.*, 807 F. App'x 674, 676 (9th Cir. 2020) ("The court focused on the 'unreasonable manner' in which Defendants litigated the case . . . highlighting Defendants' failure to comply with court rules, persistent desire to re-litigate issues already decided, advocacy that veered into 'gamesmanship,' and unreasonable responses to the litigation."). The Court does not find any additional evidence of unreasonableness or frivolousness to warrant exceptional treatment, particularly since this Court has concluded that triable issues of fact remain concerning Defendants' state of mind; these uncertainties presently preclude a finding that this is an "exceptional case" warranting fees under § 1117(a). *Cf. Nat'l Grange of Order of Patrons of Husbandry v. Cal. State Grange*, 715 F. App'x 747, 748 (9th Cir. 2018) (holding in part that the trial court did not abuse its discretion in awarding attorney's fees because Plaintiff carried its burden in showing the "[d]efendant had willfully violated the permanent injunction"). Accordingly, the Court **DENIES WITHOUT PREJUDICE** Plaintiff's request for attorney's fees.

## III.   Injunctive Relief

In addition to statutory damages, Plaintiff asks this Court to issue a permanent injunction enjoining Defendants' infringing activities. Br. at 12. The Lanham Act gives courts the "power to grant injunctions, according to the principles of equity and upon such terms as the court may deem reasonable, to prevent the violation of any right of the registrant of a mark registered in the Patent and Trademark Office or to prevent a violation under [the Lanham Act]." 15 U.S.C. § 1116(a); *see also Moroccanoil, Inc. v. Allstate Beauty Prod., Inc.*, 847 F. Supp. 2d 1197, 1203 (C.D. Cal. 2012). "Injunctive relief is the remedy of choice for trademark and unfair competition cases, since there is no adequate remedy at law for the injury caused by a defendant's continuing infringement." *Century 21 Real Estate Corp. v. Sandlin*, 846 F.2d 1175, 1180–81 (9th Cir. 1988).

A plaintiff seeking a permanent injunction must demonstrate: (1) that it has suffered irreparable injury; (2) that there is no adequate remedy at law; (3) "that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted[;]" and (4) that it is in the public's interest to issue the injunction. *eBay, Inc. v. MercExchange, LLC*, 547 U.S. 388, 392–93 (2006).

### A.   *Irreparable Injury*

First, Plaintiff asserts that irreparable injury is presumed based on the Court's finding of trademark infringement. *See* Br. at 12 (citations omitted). The Ninth Circuit, however, no longer presumes irreparable harm upon a finding of infringement. *See e.g.*, *Flexible Lifeline Sys., Inc. v. Precision Lift, Inc.*, 654 F.3d 989, 998 (9th Cir. 2011) (holding that "presuming irreparable harm . . . is inconsistent with, and disapproved by, the Supreme Court's opinions in *eBay* and *Winter*"); *see also Herb Reed Enters. LLC v. Fla. Entm't Mgmt. Inc.*, 736 F.3d 1239, 1249 (9th Cir. 2013) (holding that "actual irreparable harm must be demonstrated to obtain a permanent injunction in a trademark infringement action"). Therefore, Plaintiff's assertion that irreparable harm is presumed is wholly inconsistent with Supreme Court and Ninth Circuit precedent.

Rather, to establish irreparable injury, the plaintiff must demonstrate "the infringement manifests as the loss of control over a business' reputation, a loss of trade, and a loss of goodwill." *United Artists Corp. v. United Artist Studios LLC*, No. CV 19-828 MWF-MAA, 2020 WL 4369778, at *16 (C.D. Cal. July 7, 2020); *see also Car–Freshner Corp. v. Valio*, LLC, No. 2:14–cv–01471–RFB–GWF, 2016 WL 7246073, at *8 (D. Nev. Dec. 15, 2016) ("Damage to reputation and loss of customers are intangible harms not adequately compensable through monetary damages."); *Sennheiser Elec. Corp. v. Eichler*, No. CV 12–10809 MMM (PLAx), 2013 WL 3811775, at *10 (C.D. Cal July 19, 2013) ("Although, post-*eBay*, a court may no longer presume irreparable injury from the bare fact of liability in a trademark or trade dress case, the injury caused by the presence of infringing products in the market—such as lost profits and customers, as well as damage to goodwill and business reputation—will often constitute irreparable injury.") (citations omitted).

"Trademarks serve as the identity of their owners and in them resides the reputation and goodwill of their owners." *CytoSport, Inc. v. Vital Pharm., Inc.*, 617 F. Supp. 2d 1051, 1080 (E.D. Cal.), *aff'd*, 348 F. App'x 288 (9th Cir. 2009). "If another infringes on a mark, the person borrows the owner's reputation," preventing the trademark owner from exercising control over the quality of its mark and thus "creat[ing] the potential for damage to its reputation." *Id.* (citing *Opticians Ass'n of Am. v. Indep. Opticians of Am.*, 920 F.2d 187, 195 (3d. Cir.1990)). "Injury to the trademark owner's reputation and good will as well as to consumer expectations is difficult, if not impossible, to adequately compensate for after the fact." 5 McCarthy on Trademarks and Unfair Competition § 30:2 (5th ed. 2020).

Second, Plaintiff contends that it has been irreparably injured as a result of Defendants' infringing acts, and that Defendants' continued use of its marks "would lead to [Plaintiff's] lost sales." *See* Br. at 13. However, Plaintiff fails to provide concrete evidence of any direct loss of customers as a result of Defendants' infringement. *See OTR Wheel Eng'g, Inc. v. W. Worldwide Servs.*, *Inc.*, 602 F. App'x. 669, 672 (9th Cir. 2015) ("Although the district court's finding of reputational injury was not based on any evidence that West's lookalike tire was an inferior product . . . the court's finding of goodwill injury was supported by some record evidence[,]" including losing a customer to defendant and risk that the customer could have conveyed confidential information). At any rate, Defendants' contention that "lost sales are easily quantifiable and Plaintiff could prove them at trial" has merit. Opp'n at 5; *see Mirina Corp. v. Marina Biotech*, 770 F. Supp. 2d 1153, 1162 (W.D. Wash. 2011) ("Furthermore, lost sales or business opportunities cannot constitute an *irreparable* harm, because (assuming they exist in this case) even if they were difficult to calculate, they would still constitute monetary, measurable damages.") (citation omitted) (emphasis in original).

Finally, Plaintiff contends that the reputation of its marks has been and will be damaged as a result of Defendants continuing to utilize the same or substantially similar marks on their products. Br. at 13. Plaintiff suggests that the products bearing Defendants'

13

marks are inferior products because those goods "have failed to meet the expectations of at least some consumers." *Id.*; Undisputed Facts ¶ 32. The Court agrees. It is undisputed that "Defendants have closed at least one eBay account and opened a new one based on receiving negative customer feedback from products they sold through the eBay website." Undisputed Facts ¶ 32. Defendants also concede that their own products are inferior to Plaintiff's products and are mere replicas lacking the same quality as Plaintiff's goods. For instance, Defendants argue that "[i]t makes little sense from a business perspective for Defendants to intentionally mislead consumers into believing its wheels are OEM rather than replicas. Defendants would have many unsatisfied customers, whereas they actually have thousands of customers that are happy with their replica wheels." Opp'n at 3.

The Court finds Defendants' continued infringement of Plaintiff's marks most persuasive in supporting Plaintiff's irreparable harm. Defendants have continued to offer counterfeit products featuring Plaintiff's marks, which causes Plaintiff to lose control over the quality of its goods, and Plaintiff will continue to lose control over its quality and reputation so long as Defendants continue to infringe. *See Toyo Tire & Rubber Co. v. Kabusikiki Kaisha Tokyo Nihoon Rubber Corp,* No. 214CV01847JADVCF, 2015 WL 6501228, at *1 (D. Nev. Oct. 26, 2015) (finding "sufficient facts to support an inference of irreparable harm" given defendant's "piggy-back[ing] off of [plaintiff's] success"); *see also Wecosign, Inc. v. IFT Holdings, Inc.*, 845 F. Supp. 2d 1072, 1084 (C.D. Cal. 2012) ("If an injunction were not granted, [p]laintiff would suffer irreparable injury from the ongoing damages to its goodwill and diversion of customers to counterfeit services."). Therefore, the Court finds that Plaintiff will suffer irreparable harm as a result of Defendants' infringement unless an injunction is granted.

### B.   *No Adequate Legal Remedy*

Further, the Court finds that Plaintiff has no adequate remedy at law. "Damage to reputation and loss of customers are intangible harms not adequately compensable through monetary damages." *Car–Freshner Corp.*, 2016 WL 7246073, at *8. "The terms 'inadequate remedy at law' and 'irreparable harm' describe two sides of the same coin. If

the harm being suffered by plaintiff . . . is 'irreparable,' then the remedy at law (monetary damages) is 'inadequate.'" *Anhing Corp. v. Thuan Phong Co. Ltd.*, No. CV1305167BROMANX, 2015 WL 4517846, at *23 (C.D. Cal. July 24, 2015) (citations omitted), *appeal dismissed*, (9th Cir. 2016).

Here, Plaintiff contends that Defendants' continuing infringement shows there is no other adequate remedy aside from injunctive relief.  Br. at 13–14.  The Court agrees. Continuous infringement, regardless of whether it is determined to be willful, leaves no other adequate remedy for the Plaintiff aside from injunctive relief.  *See MAI Sys. Corp. v. Peak Comput., Inc.*, 991 F.2d 511, 520 (9th Cir. 1993) ("As a general rule, a permanent injunction will be granted when . . . there is a threat of continuing violations.").  Further, Plaintiff correctly asserts that Defendants have failed to provide any assurances that they will stop the sale and manufacturing of their counterfeit products.  *See* Reply at 9; *see also Microsoft Corp. v. Atek 3000 Comput. Inc.*, No. 06 CV 6403 SLT (SMG), 2008 WL 2884761, at *5 (E.D.N.Y. July 23, 2008) ("[P]laintiff has demonstrated that it has no adequate remedy at law since there is no assurance in the record against defendant's continued violation of plaintiff's copyrights' and trademarks.") (citations omitted). Accordingly, an award of damages alone would be inadequate to compensate Plaintiff for Defendants' ongoing counterfeiting of Plaintiff's marks.

## C.   Balance of Hardships

The balance of hardships also favors Plaintiff.  To prevail on the third factor, "the harm to Plaintiff in the absence of an injunction must outweigh the harm to Defendant as the result of one."  *Anhing Corp.*, 2015 WL 4517846, at *24.  Plaintiff asserts that it suffers a "demonstrable threat of loss of goodwill and ability to control its reputation" because of Defendants' continuing sales of infringing counterfeit products.  Reply at 9.  The Court has found that this is an irreparable injury.  *See supra* at 13–14.  Comparatively, a permanent injunction will not harm Defendants, as injunctive relief will only require Defendants to comply with the law and refrain from their continuing infringing activity.  *See* Br. at 14 (citations omitted); *see also Harman Int'l Indus., Inc v. Pro Sound Gear, Inc.*, No.

15

217CV06650ODWFFMX, 2018 WL 1989518, at *8 (C.D. Cal. Apr. 24, 2018) ("There is no indication that [defendant] will suffer hardship if a permanent injunction is entered. Rather, an injunction will merely assure [defendant's] compliance with the Lanham Act and other laws governing trademarks.").

Defendants argue that "Plaintiff dwarfs USARim in terms of size, market share, capital, and virtually every other metric." Opp'n at 5. Thus, "[e]njoining USARim would essentially put them out of business whereas Plaintiff, who reported a 2018 income of €167 billion, would scarcely even notice if an injunction was imposed." *Id.* However, Plaintiff correctly points out that Defendants' small business size, market share, and capital compared to Plaintiff's has no legal foundation in assessing Defendants' hardship. *See* Reply at 10 (citing *T-Mobile USA v. Terry*, 862 F. Supp. 2d 1121, 1552 (W.D. Wash. 2012) (stating that "the monetary benefits that [d]efendant receives from his actions are not benefits to be protected")). Accordingly, this factor also favors the issuance of injunctive relief.

### D.    *Public's Interest*

Lastly, Plaintiff argues that the issuance of a permanent injunction protects the public's interest by preventing consumer confusion. Br. at 15 (citation omitted). The Court agrees. *See AT&T Corp. v. Vision One Sec. Sys.*, No. 95–0565–IEG (BTM), 1995 WL 476251, at *7 (S.D. Cal. July 27, 1995) ("Where defendant's concurrent use of plaintiff's trademark without authorization is likely to cause confusion, the public interest is damaged by the defendant's use."). Although Defendants argue that "USARim clearly labels its wheels as replicas and informs its customers that the wheels are replicas," so "there is no clear public interest" served by an injunction, Opp'n at 5, the Court, having granted summary judgment on Plaintiff's likelihood of confusion claim, *see* ECF No. 91 at 1, disagrees. Thus, the last factor favors Plaintiff as well.

Therefore, the Court finds that Plaintiff has met the statutory and equitable requirements for permanent injunctive relief and **GRANTS** Plaintiff's request for a permanent injunction.

16-CV-875-JLS (MDD)

### E.      Scope of the Injunctive Relief

Concurrently with its Motion, Plaintiff submitted to the Court's e-file inbox a proposed order (the "Proposed Order") outlining the precise terms of the injunctive relief Plaintiff requests. *See generally* Proposed Order. Plaintiff's Proposed Order in part seeks the destruction or disposition of "[a]ll products that bear marks that are identical to, substantially indistinguishable from, or confusingly similar to any of the DAIMLER Marks," *id.* at 3; "[a]ny molds, screens, patterns, plates, negatives, or other elements used for making or manufacturing products bearing marks that are identical to, substantially indistinguishable from, or confusingly similar to any of the DAIMLER Marks," *id.*; "[a]ny labels, packages, packaging, wrappers, containers, or other unauthorized promotional or advertising material, which reproduce, copy, counterfeit, imitate, or bear any of the DAIMLER Marks," *id.*; and "[a]ny drawings, electronic files, or other templates used for designing and making the labels, packages, wrappers, containers, or other unauthorized promotion or advertising material, which reproduce, copy, counterfeit, imitate, or bear the DAIMLER Marks and/or any confusingly similar mark," *id.* at 4.

"Injunctions must be tailored to address only the specific harms suffered by the injured party." *Anhing Corp.*, 2015 WL 4517846, at *25. Under 15 U.S.C. § 1118, the decision whether to enter a destruction order is left to the court's discretion. *See Whittaker Corp. v. Execuair Corp.*, 953 F.2d 510, 519–20 (9th Cir. 1992) (affirming the district court's order for destruction of infringing items); *see also Fendi S.A.S. Di Paola v. Cosmetic World, Ltd.*, 642 F. Supp. 1143, 1146–47 (S.D.N.Y. 1986) (ordering the destruction of Defendant's infringing goods for attempting to pass off counterfeit goods as a genuine Italian product). However, "[i]t has been held that where an injunction is issued under the Lanham Act enjoining an infringer from further infringement, the rights of the plaintiff are adequately protected and an order requiring destruction of infringing articles, though permitted, may be unnecessary." *Kelley Blue Book v. Car–Smarts, Inc.*, 802 F.Supp. 278, 293 (C.D. Cal. 1992) (citing *Neva, Inc. v. Christian Duplications Int'l, Inc.*, 743 F.Supp. 1533, 1549 (M.D. Fla. 1990)).

Here, in light of the injunctive relief the Court grants below and the Court's refusal to find at this stage in the litigation that Defendants' infringement is willful, the Court finds a destruction order unnecessary to prevent future infringement.  *See Breaking the Chain Found., Inc. v. Capitol Educ. Support, Inc.,* 589 F. Supp. 2d 25, 33 (D.D.C. 2008) ("The Court agrees that, in light of the injunction, discussed above, to be entered by the Court in this matter, an order requiring the destruction of any infringing articles in the possession of the defendants is unnecessary.") (citations omitted).  The Court therefore **DENIES WITHOUT PREJUDICE** Plaintiff's request to order the destruction of materials in Defendants' possession bearing Plaintiff's marks, but otherwise **GRANTS** Plaintiff's requested injunctive relief.

## CONCLUSION

For the foregoing reasons, the Court **DENIES** Plaintiff's Motion for Partial Summary Judgment for statutory damages and attorney's fees and **GRANTS IN PART AND DENIES IN PART** Plaintiff's request for permanent injunctive relief as follows:

1.     Defendant Rasool Moalemi and the Entity Defendants, and their officers, owners, partners, directors, employees, agents, assigns, representatives, servants, subsidiaries, affiliates, distributors, dealers, and any and all persons in active concert or participation with them, are hereby permanently restrained and enjoined from engaging in or performing, directly or indirectly, any and all of the following acts:

      a.     Infringing any of the DAIMLER Marks, including U.S. Reg. No. 657,386, U.S. Reg. No. 3,614,891, and U.S. Reg. No. 4,423,458;

      b.     Manufacturing, reproducing, copying, importing, using, selling, offering to sell, advertising, promoting, displaying, licensing, transferring, distributing, receiving, shipping, or delivering any infringing products bearing marks that are identical to, substantially indistinguishable from, or confusingly similar to any of the DAIMLER Marks;

/ / /

18

c.     Engaging in any conduct that tends to falsely represent, or is likely to confuse, mislead, or deceive purchasers and/or members of the public to believe, that the products sold by Defendants, are connected with, sponsored, approved, or licensed by Daimler, or are in some way affiliated with Daimler; and

d.     From assisting, aiding, or abetting any other person or business entity in engaging in or performing, or inducing any other person or business entity to engage or perform, any of the activities referred to above.

2.    <u>Within thirty (30) days</u> of the date of the electronic docketing of this Order, Defendants shall remove all infringing uses of any of the DAIMLER Marks, and any products bearing marks that are identical to, substantially indistinguishable from, or confusingly similar to any of the DAIMLER Marks, from any websites that they use.

**IT IS SO ORDERED.**

Dated:  November 2, 2020

Hon. Janis L. Sammartino
United States District Judge

19

16-CV-875-JLS (MDD)