UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAIMLER AG,<br><br>　　　　　　　　　　Plaintiff,<br><br>v.<br><br>A-Z WHEELS LLC, et al.,<br><br>　　　　　　　　　　Defendants. | Case No.: 16-CV-875 JLS (MDD)<br><br>**ORDER GRANTING MOTION FOR CONTEMPT**<br><br>(ECF No. 146) |

Presently before the Court is Plaintiff Daimler AG's Motion for Contempt (ECF No. 146). Plaintiff seeks a Court order holding Defendants[1] in contempt for their violation of the Court's November 2, 2020 Order granting, *inter alia*, permanent injunctive relief to Plaintiff and prohibiting Defendants from continuing to sell infringing products. (ECF No. 146-1 at 2.) Defendants oppose Plaintiff's motion on the grounds that no defendant violated the permanent injunction, the products were obtained genuinely, and an order of contempt would not serve a compensatory or coercive purpose. (ECF No. 152 at 3.) On

---

[1] Remaining Defendants in this action include: A-Z Wheels LLC d/b/a USARIM; UsaRim.com; Eurotech Wheels; Galaxy Wheels & Tires LLC; Infobahn International, Inc. d/b/a Infobahn; Eurotech; Eurotech Luxury Wheels; EuroTech Wheels; UsaRim (collectively, the "Entity Defendants"); and Rasool Moalemi a/k/a Russ Moalemi.

November 30, 2021, the Court held a half-day hearing on Plaintiff's motion, and both sides presented evidence and witness testimony. (ECF No. 155.) Based on the evidence presented at the hearing, the Parties' moving papers, and the applicable law, the Court **GRANTS** Plaintiff's motion.

## LEGAL STANDARD

"A district court has the power to adjudge in civil contempt any person who willfully disobeys a specific and definite order of the court." *Gifford v. Heckler*, 741 F.2d 263, 265 (9th Cir. 1984). "The contempt 'need not be willful,' and there is no good faith exception to the requirement of obedience to a court order." *In re Dual-Deck Video Cassette Recorder Antitrust Litig.*, 10 F.3d 693, 695 (9th Cir. 1993) (quoting *In re Crystal Palace Gambling Hall, Inc.*, 817 F.2d 1361, 1365 (9th Cir. 1987)); *accord Stone v. City & Cty. of San Francisco*, 968 F.2d 850, 856 n.9 (9th Cir. 1992) ("Intent is irrelevant to a finding of civil contempt, and therefore, good faith is not a defense.").

To establish a prima facie case for civil contempt, the moving party must show, "by clear and convincing evidence," that the non-moving party disobeyed "a specific and definite court order," and that such disobedience was "beyond substantial compliance" and "not based on a good faith and reasonable interpretation of the court's order." *In re Dual-Deck Video Cassette Recorder Antitrust Litig.*, 10 F.3d at 695. If the moving party makes a prima facie case of contempt, the burden shifts to the non-moving party, the alleged contemnor, to demonstrate an inability to comply. *Stone*, 968 F.2d at 856 n.9. The non-moving party must demonstrate that it was unable to comply, despite taking all reasonable steps to do so. *Id.* (citing *Sekaquaptewa v. MacDonald*, 544 F.2d 396, 406 (9th Cir. 1976)).

"A court may wield its civil contempt powers for two separate and independent purposes: (1) 'to coerce the defendant into compliance with the court's order'; and (2) 'to compensate the complainant for losses sustained.'" *Shell Offshore Inc. v. Greenpeace, Inc.*, 815 F.3d 623, 629 (9th Cir. 2016) (quoting *United States v. United Mine Workers of Am.*, 330 U.S. 258, 303–04 (1947)).

///

# EVIDENCE OF CONTEMPT

On November 2, 2020, the Court entered the following permanent injunction in this action:

1. Defendant Rasool Moalemi and the Entity Defendants, and their officers, owners, partners, directors, employees, agents, assigns, representatives, servants, subsidiaries, affiliates, distributors, dealers, and any and all persons in active concert or participation with them, are hereby permanently restrained and enjoined from engaging in or performing, directly or indirectly, any and all of the following acts:

    a. Infringing any of the DAIMLER Marks, including U.S. Reg. No. 657,386, U.S. Reg. No. 3,614,891, and U.S. Reg. No. 4,423,458;

    b. Manufacturing, reproducing, copying, importing, using, selling, offering to sell, advertising, promoting, displaying, licensing, transferring, distributing, receiving, shipping, or delivering any infringing products bearing marks that are identical to, substantially indistinguishable from, or confusingly similar to any of the DAIMLER Marks;

    c. Engaging in any conduct that tends to falsely represent, or is likely to confuse, mislead, or deceive purchasers and/or members of the public to believe, that the products sold by Defendants, are connected with, sponsored, approved, or licensed by Daimler, or are in some way affiliated with Daimler; and

    d. From assisting, aiding, or abetting any other person or business entity in engaging in or performing, or inducing any other person or business entity to engage or perform, any of the activities referred to above.

2. <u>Within thirty (30) days</u> of the date of the electronic docketing of this Order, Defendants shall remove all infringing uses of any of the DAIMLER Marks, and any products bearing marks that are identical to, substantially indistinguishable from, or confusingly similar to any of the DAIMLER Marks, from any websites that they use.

///

(ECF No. 127 at 18–19.)  Plaintiff now moves for an order holding Defendants in contempt for violating this permanent injunction by continuing to sell products that infringe the Daimler Marks covered in the injunction.  (ECF No. 146.)  Plaintiff presents undisputed evidence of Defendants' violation by way of investigative reports, pictures of infringing product, e-mail chains, invoices, shipping confirmations, and chain of custody documentation.  The evidence, which is attached to the declaration of Sven-Eric Widmayer, legal counsel for Legal Global Litigation – Brand Protection at Daimler AG, supports the following events:

On August 3, 2021, Plaintiff's investigator, John K. Henderson, purchased three sets of "Mercedes Benz Replica" wheels—two sets from seller Defendant USARim on eBay and one set from Defendant USARim's website, usarim.com.  (ECF No. 146-3 at 1.)  Both eBay's and USARim's websites advertised for purchase "Mercedes Benz Replica" or "Replica Mercedes Benz" wheels that included "generic" center caps or "center caps." (*Id.* at 6–8, 11–12, 16–17.)  Mr. Henderson paid $1,982.40 including shipping and tax for the two sets of wheels from eBay and $983.60 including shipping and tax for the set from USARim.  (*Id.* at 2–3.)  The same day, Mr. Henderson received an e-mail from Frank Blue at usarimsales@gmail.com indicating that he received both eBay orders and the order placed through usarim.com and inquiring the make and model of the vehicle the wheels would be installed on.  (*Id.* at 4; 28.)  Mr. Henderson responded to the inquiry and asked, "Can you include MB caps?"  (*Id.* at 28.)  Mr. Blue responded to the question two minutes later stating, "Yes, I can." (*Id.*)

Mr. Henderson and Mr. Blue subsequently engaged in an e-mail exchange regarding the purchase of lug bolts (*id.*), and on August 7, another investigator of Plaintiff's, Ronald C. Humphries, received the two sets of wheels from the eBay order (*id.* at 4).  On August 8, Mr. Henderson e-mailed Mr. Blue regarding the status of the order placed from USARim's website, as it had not yet been received.  (*Id.* at 4; 29.)  Mr. Blue replied to the e-mail and provided UPS tracking numbers for the order on August 9, and Mr. Humphries received the third set of wheels on August 17.  (*Id.* at 4, 29.)

1    During this e-mail exchange, Mr. Henderson inquired again whether Mr. Blue would
2 be able to send him "MB caps." (*Id.* at 30.)  The following e-mail exchange occurred
3 between August 10 and 25:

> Mr. Henderson (on 8/10/2021): Also the wheels we got so far did not have the MB caps, can you send them with the last shipment. We have some time as cars are still in rehab.
>
> Mr. Blue (on 8/10/2021): Yes, I will.
>
> Mr. Henderson (on 8/18/2021): Frank we got the last set of wheels, the extensions were in there but we never got the MB caps, can you send them?
>
> Mr. Henderson (on 8/19/2021): If there is an extra charge for the caps just let me know and send a [sic] invoice.
>
> Mr. Henderson (on 8/25/2021): Hi Frank – I'm just checking on the MB Caps, they were not in the boxes on the last order and we are close to getting these cars ready to ship. Can you send the caps? Same address as the order please. Let me know because I'm having problems finding them elsewhere. thanks, jt[2]
>
> Mr. Blue (on 8/25/2021): Hi John, Already been shipped out here is the UPS tracking: . . .
>
> Mr. Henderson (on 8/25/2021): Thanks Frank appreciate it. Will hit you up again next round of cars we get in a few months.
>
> Mr. Blue (on 8/25/2021): Sounds good, thanks!

(ECF No. 146-4 at 11–12.)

On August 27, Mr. Humphries received twelve center caps resembling Mercedes Benz center caps from Mr. Blue and subsequently mailed the center caps to Mr. Widmayer.

---

[2]    Mr. Henderson used the alias "John Thomas" during the investigation.

(*Id.* at 2.) In his declaration, Mr. Widmayer declares that, after examining the center caps received from Mr. Blue, he can confirm that they "are not sales or resales of genuine Daimler parts." (ECF No. 146-2 ¶ 5.) Mr. Widmayer further declares that he knows the parts are not genuine because genuine parts are not, "among other things, . . . sold with adhesive backings, in contrast to those received" from Mr. Blue. (*Id.* ¶ 6.)

## DISCUSSION

To establish a prima facie case that Defendants violated the permanent injunction, Plaintiff must show by clear and convincing evidence that Defendants disobeyed "a specific and definite court order," and that such disobedience was both "beyond substantial compliance" and "not based on a good faith and reasonable interpretation of the permanent injunction." *In re Dual-Deck Video Cassette Recorder Antitrust Litig.*, 10 F.3d at 695. The Court finds that Plaintiff has met this burden.

First, Plaintiff has shown by clear and convincing evidence that Defendants sold infringing product in violation of the permanent injunction. It is undisputed that Mr. Blue was an employee of Defendants Rasool Moalemi and USARims when he sold the counterfeit center caps to Plaintiff's investigator, and the permanent injunction specifically covers this action. The injunction clearly states that "Defendant Moalemi and the Entity Defendants, and their . . . **employees** . . . and any and all persons in active concert or participation with them" are enjoined from "selling, offering to sell, advertising, promoting, . . . transferring, distributing, receiving, shipping, or delivering any infringing products bearing marks that are identical to, or substantially indistinguishable from, or confusingly similar to any of the DAIMLER Marks." (ECF No. 127 at 18 (emphasis added).) The injunction further prohibits any employee of Defendant Moalemi of the Entity Defendants "[f]rom assisting, aiding, or abetting any other person or business entity in engaging in or performing, or inducing any other person or business entity to engage or perform, any of" these activities. (*Id.*)

In their opposition, Defendants posit that "no Defendant" violated the injunction because Mr. Blue was an employee of non-defendant ABC Wheels when he sold the

infringing center caps to Plaintiff's investigator.[3]  (ECF No. 152 at 1, 3.)  But as argued by Plaintiff in reply, the undisputed evidence shows that Mr. Henderson purchased the wheels and center caps from Defendant USARim via the usarim.com website and seller "USARim" on eBay.[4]  (ECF No. 153 at 3.)  Even were the Court to entertain Defendants' unsubstantiated argument that the wheels and center caps were purchased from ABC Wheels, this argument is unavailing.  Defendants do not dispute that ABC Wheels is a business owned by Defendant Moalemi, and Mr. Blue—even if an employee of ABC Wheels—is an employee of Defendant Moalemi.  Whether Mr. Blue worked for USARim or ABC Wheels at the time is inconsequential given the scope of the injunction.

Second, Plaintiff has shown that Defendants have violated the permanent injunction in a manner beyond substantial compliance, for the sale of twelve infringing center caps, which bear the Daimler Marks referenced in the injunction, is exactly the type of activity the Court attempted to prevent in issuing the injunction.  Further, no reasonable interpretation of the injunction would permit Defendants to continue to sell infringing product.  Notably, Defendants make no argument that they have substantially complied with the injunction or that the sale of the infringing center caps was based on a good faith and reasonable interpretation of the injunction.  Instead, Defendants maintain that ABC Wheels obtained the center caps "as genuine parts." (ECF No. 152 at 3.)  Despite making

---

[3] Contrary to Defendants' representations, Mr. Blue testified during his deposition that he works for Defendant USARim, that he associates USARim with Defendant Moalemi, and that when he greets customers on the phone he says, "USARim," not "ABC Wheels." (ECF No. 146-7 at 2:16–3:11.)  Mr. Blue further testified that he uses the USARim e-mail address when answering customer e-mails, and ABC Wheels does not have an e-mail account that he "know[s] of." (*Id.* at 3:12–21.)

[4] Additionally, Defendant Moalemi admitted at his deposition that he is the seller behind the USARim's eBay account (ECF No. 153-1 at 4:20–5:2) and that he controls the usarimsales@gmail.com account (*id.* at 2:22–3:1), which was used in the sale of the infringing center caps to Plaintiff's investigator.

7

such a claim, Defendants provide no evidence of their own to rebut the Plaintiff's evidence[5] that center caps sold by Mr. Blue to Plaintiff's investigator were in fact counterfeit. The Court finds it of no coincide that Defendants abandoned this theory at the hearing.

But the theory Defendants did present at the hearing is equally, if not more, dubious. At the hearing, Mr. Blue's testified that he obtained the counterfeit center caps from a "third-party website" as a favor to the customer, Mr. Henderson, although it is not his typical practice to do favors for customers. Defendants, however, provided no evidence of the digital paper trail Mr. Blue's Good-Samaritan deed surely would have created. And even if the Court were to believe Mr. Blue's non-credible and self-serving testimony that he purchased the center caps from a third-party, had them delivered first to USARim instead of Mr. Henderson, and then shipped them to Mr. Henderson, the permanent injunction enjoins Defendants' employees from "shipping" and "delivering any infringing products" and from "assisting, aiding, or abetting any other person or business entity in engaging in" the activities covered by the injunction, including the sale of infringing product.

Having found that Plaintiff has shown by clear and convincing evidence that Defendants violated the permanent injunction, and Defendants have made no argument as to their inability to comply, the Court turns to whether finding Defendants in contempt would serve a coercive or compensatory purpose. The Court finds that it may wield its civil contempt powers for both purposes here. *See Gen. Signal Corp. v. Donallco, Inc.*, 787 F.2d 1376, 1380 (9th Cir. 1986) ("Sanctions for civil contempt may be imposed to coerce obedience to a court order, or to compensate the party pursing the contempt action

---

[5] As stated above, Mr. Widmayer's declaration provides, among other differences, that genuine Mercedes-Benz center caps do not have adhesive backings, but the center caps sold by Mr. Blue did. (ECF No. 146-2 ¶ 6.) Mr. Widmayer testified to further differences between the genuine and counterfeit center caps at the hearing. He explained, for example, that genuine Mercedes-Benz center caps have unique 10-digit part numbers on them, but the center caps sold by Mr. Blue did not have part numbers.

for injuries resulting from the contemptuous behavior, or both." (citing *United Mine Workers of Am.*, 330 U.S. at 303–04)).

Defendants argue in their opposition that there is no coercive justification for an order of contempt because Defendant Moalemi, the Entity Defendants, and ABC Wheels "are completely shut down for many reasons, including lack of continued viability." (ECF No. 152 at 3.) Defendants further contend that "[a]ll websites and sales operations have been shuttered, all inventory has been liquidated, and there is no more business being conducted or planned in the future." (*Id.*) Defendants, however, have failed to provide any evidence that these representations are true other than Defendant Moalemi's self-serving testimony at the hearing,[6] and the Court agrees with Plaintiff that "statements made through attorney argument[,] are clearly insufficient to demonstrate compliance" with the permanent injunction and a cessation of infringing business activities. (ECF No. 153 at 8.) Therefore, without any reassurance that Defendants will not or cannot continue to violate

///

---

[6] At the hearing, Defendants attempted to admit into evidence two exhibits that purportedly show that Defendants are unable to carry out any further business activities. Plaintiff objected to the admission of these exhibits on the ground that they were not identified prior to the hearing, as required by the Court's October 25, 2021 Order. (*See* ECF No. 151 ("The parties are cautioned that any witnesses or exhibits not listed in the parties' joint list of witnesses and exhibits shall not be admitted and considered at the hearing.").) Because Defendants did not timely produce these exhibits, Plaintiff's objection is hereby **SUSTAINED**. Nevertheless, even if the Court considered these exhibits, neither exhibit proves that Defendants are out of business or otherwise unable to continue violating the permanent injunction. Exhibit A appears to be a receipt from Ecology Recycling Services, LLC to USARim for the recycling of unspecified aluminum wheels and cardboard. The receipt does not include any detailed inventory of what exactly was recycled. Exhibit B is a "Judgment for Possession Pursuant to Stipulation of Parties" filed in San Diego Superior Court and executed by "Defendants ABC WHEELS INC. a.k.a. ABC WHEELS a.k.a. USA RIM ("ABC WHEELS") and RASOOL MOALEMI. This filing shows only that judgment was entered against Defendant Moalemi and ABC Wheels for the possession of real property; it does not show, for example, that Defendants are unable to carry out their business online.

the permanent injunction, the Court finds that an order of contempt will serve a coercive purpose.

Defendants additionally argue that an order of contempt would serve no compensatory purpose because "the alleged contempt involved 12 parts sold for less than $100." (ECF No. 152 at 3.) This argument, however, misses the mark for reasons Plaintiff identifies in reply, and namely, Plaintiff's request for disgorgement of profits as a compensatory contempt sanction. *See Jerry's Famous Deli, Inc. v. Papanicolaou*, 383 F.3d 998, 1004 (9th Cir. 1985) ("[D]isgorgement of profits is a traditional trademark remedy and the district court's use of profits as a measure for the contempt sanction is hardly a novel proposition."). Compensatory sanctions may also take the form of Plaintiff's attorneys' fees in obtaining the contempt finding. *Donovan v. Burlington N., Inc.*, 781 F.2d 680, 684 (9th Cir. 1986) ("[T]he cost of bringing the violation to the attention of the court is part of the damages suffered by the prevailing party and those costs would reduce any benefits gained by the prevailing party from the court's violated order." (quoting *Perry v. O'Donnell*, 759 F.2d 702, 704 (9th Cir. 1985))). Accordingly, the Court does not share Defendants' view that an order of contempt would serve no compensatory purpose.[7]

## CONCLUSION

Based on the evidence before the Court, both attached to Plaintiff's motion and presented at the hearing, it is undisputed that Defendant Moalemi and the Entity Defendants have failed to comply with the permanent injunction issued by the Court on

---

[7] Additionally, as pointed out by Plaintiff in reply (ECF No. 153 at 9–10), Defendants' contention that any contempt sanction over $5,000 requires a jury trial is incorrect. Because Plaintiff seeks a finding of civil contempt—not criminal contempt—a jury trial is not required. *Int'l Union, United Mine Workers of Am. v. Bagwell*, 512 U.S. 821, 827 (1994) ("In contrast [to criminal contempt sanctions], civil contempt sanctions, or those penalties designed to compel further compliance with a court order, are considered to be coercive and avoidable through obedience, and thus may be imposed in an ordinary civil proceeding upon notice and an opportunity to be heard. Neither a jury trial nor proof beyond a reasonable doubt is required." (footnotes omitted)).

November 2, 2020.  Accordingly, Plaintiff's Motion for Contempt (ECF No. 146) is hereby **GRANTED**, and the Court **ORDERS** as follows:

1. Defendants shall within **fourteen (14) days from the date of this Order** fully comply with the permanent injunction issued by the Court on November 2, 2020 (ECF No. 127 at 18–19).

2. Defendants shall **within sixty (60) days from the date of this Order**:

    a. Produce to Plaintiff an accounting of all profits received from the marketing and sale of products in violation of the permanent injunction;

    b. Produce to Plaintiff source information and transaction documents for the subject products;

    c. Produce to Plaintiff information regarding all financial accounts used in connection with the purchase or sale of the subject products; and

    d. Destroy or otherwise dispose of the subject products in their possession and produce to Plaintiff an accounting for such destruction or disposal.

3. A telephonic Status Conference regarding Defendants' compliance with this Order and the issuance of a briefing schedule regarding the determination of contempt sanctions shall be held on **April 1, 2022**, at **3:30 PM** before Judge Sammartino.  The parties shall contact the Court's Courtroom Deputy by e-mail at alex_ramos@casd.uscourts.gov for teleconference access information.

**IT IS SO ORDERED.**

Dated:  January 31, 2022

Hon. Janis L. Sammartino
United States District Judge