1
2
3
4
5
6
7
8                    UNITED STATES DISTRICT COURT
9                  SOUTHERN DISTRICT OF CALIFORNIA
10

11 | MERECES-BENZ GROUP AG,
   | a German corporation,
12 |
   |                              Plaintiff,
13 |
   | v.
14 |
15 | A-Z WHEELS LLC d/b/a USARim.COM;
   | EUROTECH WHEELS, a California
16 | company; GALAXY WHEELS & TIRES,
   | LLC, a California company; INFOBAHN
17 | INTERNATIONAL, INC. d/b/a
   | INFOBAHN; EUROTECH; EUROTECH
18 | LUXURY WHEELS; EUROTECH
19 | WHEELS; USARim; RYAN MOALEMI,
   | an individual; RASOOL MOALEMI a/k/a
20 | RUSS MOALEMI, an individual;
   | JOSHUA MOALEMI, an individual;
21 | and Does 1-10 inclusive,
22 |
23 |                             Defendants.

Case No.:  16-CV-875 JLS (MDD)

**ORDER (1) VACATING HEARING ON CONTEMPT SANCTIONS MOTION; (2) GRANTING IN PART MOTION FOR CONTEMPT SANCTIONS; (3) AWARDING COMPENSATORY AND COERCIVE SANCTIONS; AND (4) SETTING BRIEFING SCHEDULE FOR MOTION FOR ATTORNEYS' FEES**

(ECF No. 164)

24

25     Presently before the Court is Plaintiff Mercedes-Benz Group AG's[1] Motion for

26 Contempt Sanctions ("Mot.," ECF No. 164).  Also before the Court are Defendants'

27 _____

28 [1] On April 28, 2022, the Court granted Plaintiff's unopposed motion to amend the case caption given that Daimler AG was renamed Mercedez-Benz Group AG on February 1, 2022.  *See* ECF No. 163.

1

Opposition to ("Opp'n," ECF No. 165) and Plaintiff's Reply in Support of ("Reply," ECF No. 166) the Motion.  The Court finds this matter appropriately decided on the papers without oral argument and accordingly **VACATES** the hearing scheduled for June 30, 2022.  *See* S.D. Cal. CivLR 7.1(d)(1); *see also Conn. Gen. Life Ins. Co. v. New Images of Beverly Hills*, 56 F. App'x 826, 827 (9th Cir. 2003) (rejecting argument that district court should have held evidentiary hearing before holding appellant in contempt and sanctioning appellant as "[a]ppellant was afforded notice and an opportunity to be heard; nothing more was required") (citing *United States v. Ayres*, 166 F.3d 991, 995 (9th Cir. 1995)).  Having considered the Parties' arguments and the law, the Court **GRANTS IN PART** Plaintiff's Motion and **AWARDS** compensatory sanctions in the amount of $100,000 plus attorneys' fees and a coercive forward-looking sanction of $1,000 per mark for future violations.

## BACKGROUND

In 2016, Plaintiff, a producer of luxury automotive vehicles and parts, initiated the instant action against Defendants, sellers of counterfeit automotive wheels, for federal trademark infringement and counterfeiting, federal unfair competition and false designation of origin, trademark dilution, infringement of U.S. design patents, and related violations of California state law.  *See generally* ECF No. 1 ("Compl.").  In January 2018, Plaintiff moved for partial summary judgment against Defendants on its trademark infringement and counterfeiting claim and its design patent infringement claim.  *See generally* ECF No. 58.  Following briefing and oral argument on the motion, *see* ECF No. 90, on August 13, 2018, the Court granted Plaintiff's motion for partial summary judgment in its entirety, *see generally* ECF No. 91.  Plaintiff subsequently filed a motion for partial summary judgment for statutory damages, injunctive relief, and attorneys' fees.  *See generally* ECF No. 120.  On November 2, 2020, the Court denied without prejudice the motion as to statutory damages and attorneys' fees but granted permanent injunctive relief enjoining Defendants from, *inter alia*, continuing to sell products that infringe the word mark "MERCEDES-BENZ" or three "Three-Point Star" marks registered to Plaintiff.  *See generally* ECF No. 127.

On October 4, 2021, Plaintiff filed a motion for contempt. *See* ECF No. 145. On November 30, 2021, the Court held a half-day hearing on the contempt motion, at which both sides presented evidence and witness testimony. *See* ECF No. 155. On January 31, 2022, the Court granted Plaintiff's contempt motion. *See* ECF No. 158 (the "Contempt Order"). The Contempt Order thoroughly summarized the evidence of Defendants' contempt, and the Court incorporates by reference the summary set forth therein. *See id.* at 3–6. In brief, the Court found that the evidence clearly and convincingly showed Defendants had violated the permanent injunction and that Defendants failed to make any argument concerning their inability to comply. *Id.* at 6–8. The Court then determined that a finding of contempt would serve a coercive purpose given Defendants' failure to evidence their alleged cessation of infringing business activity. *Id.* at 9–10. In so doing, the Court reasoned that Defendant Rasool Moalemi's self-serving testimony at the contempt hearing and Defendants' attorney argument were "clearly insufficient to demonstrate compliance with the permanent injunction and a cessation of infringing business activities." *Id.* at 9 (internal quotation marks and citation omitted). The Court further found that an order of contempt would serve a compensatory purpose, rejecting Defendants' argument that the twelve infringing center caps sold to Plaintiff's investigator "sold for less than $100" and noting that Plaintiff potentially was entitled to both disgorgement of profits and its attorneys' fees. *Id.* at 10. Accordingly, the Contempt Order required Defendants to fully comply with the permanent injunction within fourteen days, and, within sixty days, to produce to Plaintiff certain information relevant to a determination of Defendants' profits on sales in violation of the permanent injunction and an accounting of the destruction or disposal of infringing products in Defendants' possession. *Id.* at 11.

The Court subsequently ordered the Parties to file a joint status report regarding Defendants' compliance with the Contempt Order. *See* ECF No. 159 ("Joint Br."). Defendants represent in the Joint Brief that they are in full compliance with the Court's permanent injunction. *See id.* at 2. Plaintiff contests this statement, contending that "Defendants had not complied with the Permanent Injunction Order at time of the hearing

on the Motion for Contempt of that Order, and have not provided any evidence to substantiate their current claim of otherwise having complied." *Id.* at 3. Concerning the documents Defendants were ordered to produce to Plaintiff to assess Plaintiff's damages, Defendants indicate that "[a]ll responsive documentation was presented (mostly by Plaintiff) and discussed with the Court at the November 30, 2021 hearing. Defendants have no more documentation than what was presented and discussed, and their profits were less than $500." *Id.* at 3; 5; 6 (citations omitted). Plaintiff contends that Defendants have provided no documents accounting for their profits or the sourcing of Defendants' infringing parts and that the Declaration of Russ Moalemi attached to the Joint Brief is wholly inadequate. *Id.* at 3–5, 5–6, 6–7. Concerning the destruction of the infringing products and an accounting thereof, Defendants' position is that, "[a]s discussed and documented with the Court at the November 30, 2021 hearing, Defendants have destroyed all inventory in the process of closing down all of their business operations." *Id.* at 7 (citation omitted). Plaintiff counters that the infringing wheel caps and wheel sets shipped to its investigator are still in Plaintiff's possession, so clearly not all infringing products have been destroyed; at any rate, "a mere statement confirming disposal made by either Defendants or counsel in the present circumstances would be insufficient to satisfy the accounting requirement set forth by the Court." *Id.* at 7–8. Thereafter, the Court set a briefing schedule and a hearing date for the instant Motion.

## LEGAL STANDARD

The district court has wide latitude and a broad range of civil contempt sanctions at its disposal, such as "fine[s], imprisonment, receivership, and a broader category of creative, non-traditional sanctions." *United States v. States of Tenn.*, 925 F. Supp. (W.D. Tenn. 1995); *see also Hook v. Arizona*, 907 F. Supp. 1326, 1339 (D. Az. 1995). Sanctions may be imposed to coerce defendants into compliance with the court's order, to compensate the party pursuing the contempt action for losses sustained as a result of the contemptuous behavior, or both. *United States v. United Mine Workers*, 330 U.S. 258, 303–04 (1947); *United States v. Bright*, 596 F.3d 683, 696–97 (9th Cir. 2010).

Regarding coercive sanctions, "[g]enerally, the minimum sanction necessary to obtain compliance is to be imposed." *Whittaker Corp. v. Execuair Corp.*, 953 F.2d 510, 517 (9th Cir. 1992) (citing *Spallone v. United States*, 493 U.S. 265, 280 (1990)). Compensatory sanctions, meanwhile, "are limited to 'actual losses *sustained as a result of the contumacy*.'" *Gen. Signal Corp. v. Donallco, Inc.*, 787 F.2d 1376, 1380 (9th Cir. 1986) (quoting *Shuffler v. Heritage Bank*, 720 F.2d 1141, 1148 (9th Cir. 1983)) (emphasis in original); *see also United Mine Workers*, 330 U.S. at 304 (holding compensatory fine must "be based upon evidence of complainant's actual loss").  In a trademark case such as this one, "[t]he district court may use the Lanham Act as a guide for imposing contempt sanctions." *Toyo Tire & Rubber Co. v. Hong Kong Tri-Ace Tire Co.*, 281 F. Supp. 3d 967, 988 (C.D. Cal. 2017) (citing *Howard Johnson Co. v. Khimani*, 892 F.2d 1512, 1519 (11th Cir. 1990)).  Further, "[c]ompensatory awards may, under certain circumstances, include an award to the aggrieved party of the attorneys' fees and costs in bringing the contempt proceeding." *Id.* at 992 (citations and footnote omitted).   "[A]ttorneys' fees in a civil contempt proceeding are limited to those reasonably and necessarily incurred in the attempt to enforce compliance." *Id.* at 993 (citations omitted).

## ANALYSIS

### I.    Summary of the Parties' Arguments

Plaintiff seeks maximum statutory damages under the Lanham Act of $2,000,000 per mark, or $6,000,000 total, given that Defendants' infringement was blatantly willful. Mot. at 6–10 (citing, *inter alia*, 15 U.S.C. § 1117(c)(2)).

Alternatively, Plaintiff asks the Court to award maximum statutory damages under 15 U.S.C. § 1117(c)(1) of $200,000 per mark, or $600,000 total. *Id.* at 10–15.  Plaintiff notes that Defendants' failure to produce the information requested in the Contempt Order has made it virtually impossible to calculate Defendants' actual profits, and that such noncompliance should not be rewarded; thus, statutory damages are an appropriate measure of damages for Defendants' contempt. *Id.* at 11–12.  Plaintiff further claims that "an award of the maximum statutory damages is in line with a reasonable estimate of the

historical sales and profit performance of Defendants." *Id.* at 12.  Plaintiff notes that, from March 2010 to June 2017, incomplete financial records from Defendants show that Defendants realized sales of approximately $34,000 per month of products using Plaintiff's "MERCEDES-BENZ" word mark. *Id.* at 12–13.  Using that figure as a guide, Defendants would have sold more than $373,000 in goods using the "MERCEDES-BENZ" word mark during the eleven-month period between the issuance of the injunction and the filing of Plaintiff's contempt motion. *Id.* at 14.  Defendants have claimed, in documents, a profit realization of fifteen percent; thus, Defendants would have made, extrapolating from the incomplete historical sales data, an estimated $56,000 on the "MERCEDES-BENZ" word mark during that time. *Id.*  Further, it is reasonable to assume that sales of products using the "MERCEDES-BENZ" word mark also use at least one Three-Point Star mark, as the wheel sets Plaintiff's investigator purchased from Defendants did. *Id.* at 14–15.  Accordingly, at least $56,000 in profits from infringing sales of products using Plaintiff's Three-Point Star marks were likely made during the eleven-month period in question as well. *Id.* at 15.

Finally, Plaintiff seeks its fees and costs in bringing the contempt motion. *Id.* at 15–16.  Through March 31, 2022, Plaintiff had incurred more than $78,000 in fees and more than $15,000 "in disbursements associated with the instant Motion for Contempt"; however, Plaintiff acknowledges that additional costs will be incurred in filing its reply and preparing for and attending any hearing and seeks leave to supplement its figures. *Id.* at 16.

Defendants respond that the requested sanctions are "preposterous" for "a single sale of . . . 'twelve infringing center caps.'"  Opp'n at 1.  Defendants rely on their claim in the Joint Brief that they are in full compliance with the injunction and Contempt Order, as well as Plaintiff's failure to bring forth any contrary evidence, to argue that "only a nominal, *de minimis* amount of contempt sanctions and/or attorneys' fees etc." is appropriate here. *Id.* at 1–3.

/ / /

In reply, Plaintiff argues that Defendants' arguments "are misleading, immaterial to the determination of appropriate contempt sanctions, and/or directly contradicted by the information already of record in the present case." Reply at 1. Plaintiff notes that Defendants repeatedly argue that Plaintiff fails to support its requests with evidence, but Plaintiff argues "that it was Defendants who were mandated to (and did not) provide information and/or documents which would have enabled presentation of such evidence." *Id.* at 3. Plaintiff further argues that Defendants' focus on the products purchased by Plaintiff's investigator is inappropriate, as Plaintiff is entitled to disgorgement of all Defendants' infringing profits from November 2, 2020, the date the permanent injunction was entered. *Id.* at 4. Further, Plaintiff claims that Defendants' reliance on testimony from the contempt hearing is similarly inappropriate, as that hearing focused on whether Defendants were in compliance with the injunction and not the issue of damages. *Id.* at 7. To the extent the testimony presented by Defendants at the hearing is relevant, it "lacked any credibility." *Id.* Finally, Plaintiff argues that Defendants' claims that the documents they were ordered to produce do not exist or are unavailable "should be taken with skepticism, as [Defendants] have made similar representations in the case, only to produce such documents when compelled." *Id.* at 8.

## II. Quantum of Sanctions

In its Contempt Order, the Court found Defendants' self-serving and incredible statements insufficient to establish that they had ceased sales of infringing products in contravention of the permanent injunction. *See* Contempt Order at 7–8 (Mr. Blue), 9–10 (Mr. Moalemi). Despite that finding and the Court's express order that Defendants produce evidence to Plaintiff to show their infringing sales during the relevant period and their compliance with the permanent injunction, Defendants claim no such evidence exists.

The Court agrees with Plaintiff that Defendants' failure to provide Court-ordered evidence should not be used as a sword in arguing that there is insufficient evidence of Defendants' profits to award Plaintiff compensatory damages for Defendants' clear contempt. In copyright cases, courts have sometimes turned to statutory damages in

awarding compensatory contempt sanctions where "it is difficult to place monetary value on the intangible harm caused be Defendants' actions – e.g., dilution of the brand or harm to reputation." *Lyons P'ship, L.P. v. Nat'l Disc. Costume Co.*, No. 06CV605 BTM, 2007 WL 9776595, at *4 (S.D. Cal. Feb. 5, 2007); *see also BMG Music v. Perez*, 952 F.2d 318, 320 (9th Cir. 1991) (upholding contempt sanction of $10,000 per violation of injunction as not an abuse of discretion given that it was "an amount no greater than the statutory damages for the resulting copyright infringement"); *Adobe Sys. Inc. v. Software Tech*, No. 5:14-CV-02140-RMW, 2015 WL 6951875, at *5–6 (N.D. Cal. Nov. 10, 2015) (awarding sanction based on statutory damages at $100,000 per infringed copyrighted work); *Oracle USA, Inc. v. Rimini St., Inc.*, No. 210CV00106LRHVCF, 2022 WL 112187, at *34 (D. Nev. Jan. 12, 2022) (awarding contempt damages of $100,000 per willfully infringed work and $30,000 per non-willfully infringed work in copyright action). Accordingly, given the lack of clear evidence of Plaintiff's harm and the fact that that shortcoming is attributable to Defendants' failure to comply with the Contempt Order and produce evidence to Plaintiff to aid in these calculations, the Court finds it appropriate here to award a measure of statutory damages for Defendants' contemptuous infringement of Plaintiff's trademarks.

Although the Court finds that the evidence here does support a finding that Defendants' contemptuous infringement was willful, the Court also is concerned that an award of damages under 15 U.S.C. § 1117(c)(2) is more punitive than remedial and therefore inappropriate as a civil contempt sanction. *See, e.g.*, *Lyons P'ship*, 2007 WL 9776595, at *3 (finding civil contempt sanctions guided by statutory damages provision at 17 U.S.C. § 504(c)(2) punitive and instead awarding civil contempt sanctions guided by statutory damages provision at 17 U.S.C. § 504(c)(1)).

Accordingly, the Court finds it appropriate to award statutory damages pursuant to 15 U.S.C. § 1117(c)(1) as a compensatory sanction. The Court believes $50,000 for violations of the "MERCEDES-BENZ" word mark and $50,000 for violations of Plaintiff's Three-Point Star marks, for a total award of $100,000, is sufficient to compensate Plaintiff for Defendants' infringement following the entry of the permanent injunction, particularly

as historical sales data suggests these figures may be in line with Defendants' actual profits during that period of time.  Further, to coerce Defendants' compliance with the injunction, the Court finds it appropriate to order a forward-looking sanction of the minimum statutory damages of $1,000 per mark for violations of the injunction going forward.  *See Fendi Adele S.R.L. v. Burlington Coat Factory Warehouse Corp.*, 642 F. Supp. 2d 276, 280 (S.D.N.Y. 2009).  Finally, the Court finds it appropriate to award Plaintiff its reasonable attorneys' fees and costs in pursuing the instant contempt proceedings against Defendants.  *See, e.g.*, *Lyons P'ship*, 2007 WL 9776595, at *4 (finding, in ruling on successful contempt motion, that movant "is entitled to compensation in the form of reasonable attorney's fees and costs it incurred in connection with bringing this motion"); *Toyo Tire*, 281 F. Supp. 3d at 993 (similar).  Because the fees and costs adduced by Plaintiff in its Motion were not complete, *see* Mot. at 16, the Court will afford Plaintiff an opportunity to brief this issue.

## CONCLUSION

In light of the foregoing, the Court **VACATES** the June 30, 2022 hearing in this matter and **GRANTS IN PART** Plaintiff's Motion for Contempt Sanctions (ECF No. 164). The Court **AWARDS** Plaintiff compensatory sanctions in the amount of $100,000 as well as Plaintiff's reasonable attorneys' fees in litigating Defendants' contempt.  The Court further **AWARDS** a forward-looking coercive sanction of $1,000 per infringed mark for future violations of the injunction.

Plaintiff **SHALL FILE** a motion for attorneys' fees on or before June 30, 2022. Defendants **SHALL FILE** their opposition on or before July 14, 2022.  Plaintiff **MAY FILE** its reply, if any, on or before July 21, 2022.  Following briefing, the Court will decide Plaintiff's motion for attorneys' fees on the papers, without oral argument, pursuant to Civil Local Rule 7.1(d)(1), at which time the Court will set this matter for a status hearing.

**IT IS SO ORDERED.**

Dated:  June 23, 2022

*Janis L. Sammartino*
Hon. Janis L. Sammartino
United States District Judge